UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRICIA HARDING MORRISON,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED,<br><br>Defendant. | Case No. 2:14-cv-01207-RFB-PAL<br><br>**ORDER** |

## I.   INTRODUCTION

This case comes before the Court on two Motions to Dismiss, the first filed by Defendants Nevada State Athletic Commission, Marc Ratner, and Dr. Margaret Goodman (ECF No. 11) and the second filed by Defendants Quest Diagnostics Inc. and John Hiatt (ECF No. 12). For the reasons stated below, Defendants' motions are granted in part and denied in part. Plaintiff Patricia Harding Morrison's Complaint is dismissed with leave to amend to demonstrate that she has standing to sue in this case. However, certain of Morrison's claims are futile and are denied with prejudice, as further described below.

## II.   BACKGROUND

Plaintiff Patricia Harding Morrison filed a pro se Complaint in this Court on July 24, 2014. ECF No. 1. Her Complaint alleges the following facts.

. . .

Plaintiff is the surviving spouse of Tommy David Morrison, a former heavyweight boxing champion. Compl. at 2. On February 10, 1996, Defendant Quest Diagnostics, Inc. ("Quest") produced a laboratory report following a blood test of Morrison.[1] Id. ¶¶ 1-2, 5. Quest then diagnosed Tommy Morrison as having the human immunodeficiency virus ("HIV") and reported this diagnosis to Defendant Nevada State Athletic Commission ("Commission"). Id. ¶¶ 1-2. Upon receiving this information, the Commission and Defendant Marc Ratner also diagnosed Morrison as having HIV, which disqualified him from participating in an upcoming boxing match and caused him to lose a contract worth more than $10 million. Id. ¶¶ 4, 9.

Subsequently, Defendant John Hiatt, an employee of Quest, retrieved an archived copy of the laboratory report and confirmed Quest's diagnosis of Morrison as having HIV. Id. ¶ 12. Defendant Dr. Margaret Goodman, an employee of the Commission, also requested the Quest lab report in 2007. Id. ¶ 13. Quest provided this report and informed Dr. Goodman that the results were "ironclad and unequivocal." Id. ¶ 18. Dr. Goodman then informed the media that Morrison's diagnosis of HIV had been confirmed. Id. ¶ 13. Plaintiff alleges that this "diagnosis" was unsupported by any clinical medical examination conducted by any Quest employee and that Quest did not receive written consent from Morrison or his attending physician, Dr. Robert Voy, to disclose his personal medical information. Id. ¶¶ 18-21. Morrison died on September 1, 2013. Id. at 2. An autopsy was performed, and his blood was found to have no evidence of HIV or "AIDS defining diseases." Id.

Construing the Complaint liberally, Plaintiff alleges the following causes of action:

**1. Negligence:** Plaintiff alleges that Defendants negligently diagnosed Morrison with HIV when in fact he did not have that disease. Id. ¶¶ 2-4. She also states that Quest performed several blood tests on her husband, each of which contained warnings or disclaimers stating that they were not to be used as conclusive HIV tests. Id. ¶¶ 36-38. Plaintiff alleges that Quest did not disclose these disclaimers and reported a "diagnosis" of HIV-positive to the Athletic Commission, which accepted Quest's diagnosis and treated it as conclusive. Id. ¶¶ 31, 35, 39.

---

[1] Throughout this Order, unless otherwise specified, "Morrison" refers to Tommy David Morrison, Plaintiff's late husband.

**2. Defamation:** Plaintiff states that Defendants Hiatt and Goodman informed the media that her husband was diagnosed with HIV when in fact he did not have that disease. Id. ¶ 4. Plaintiff also alleges that Defendants reported the false diagnosis to the Department of Health and Human Services. Id. ¶ 44.

**3. Fraud:** Plaintiff states that Quest "misrepresented themselves as being physicians capable of 'diagnosing' Tommy Morrison" as HIV-positive. Id. ¶ 14.

**4. HIPAA Violation:** Plaintiff alleges that Quest released Morrison's personal medical information to the Athletic Commission without authorization, in violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Id. ¶ 46.

**5. Unauthorized Practice of Medicine:** Plaintiff alleges that Defendants' diagnosis of her husband as having HIV constitutes the unauthorized practice of medicine, as Defendants are either not licensed to practice medicine or were not his attending physician. Id. ¶¶ 25, 29, 41.

The Athletic Commission, Marc Ratner, and Dr. Margaret Goodman (the "Athletic Commission Defendants") filed a Motion to Dismiss on October 3, 2014. ECF No. 11. Quest and John Hiatt (the "Quest Defendants") also filed a Motion to Dismiss on the same date. ECF No. 12. Plaintiff filed a Motion for Partial Summary Judgment against Hiatt on June 5, 2015, against Dr. Goodman on July 16, 2015, and against Quest on August 20, 2015. ECF No. 40, 58, 69. On September 14, 2015, the Court held a hearing on Defendants' Motions to Dismiss and issued preliminary rulings on those motions. This Order contains the Court's rulings as outlined at the September 14 hearing.

### III.   LEGAL STANDARD

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

## IV. DISCUSSION

In their Motions to Dismiss, Defendants make several arguments as to why the Complaint should be dismissed. First, Defendants argue that Plaintiff has not established that she has standing to sue on behalf of her late husband. Second, Defendants argue that Plaintiff's claims are barred by the statute of limitations. Third, the Athletic Commission Defendants contend that they are entitled to discretionary-act immunity under N.R.S. 41.032. Fourth, the Quest Defendants argue that Plaintiff's negligence claim is barred by the economic loss doctrine. Finally, Defendants argue that her remaining causes of action do not state claims upon which relief can be granted.

The Court finds that the Motions to Dismiss must be granted to the extent they seek dismissal for lack of standing. Plaintiff shall be given leave to amend her Complaint with facts sufficient to show that she has standing to bring this action. In addition, Plaintiff shall be granted leave to amend her negligence, defamation, and fraud claims, as the Court finds it possible that Plaintiff could allege facts that would survive dismissal despite Defendants' arguments to the contrary. However, Plaintiff's claims for a HIPAA violation and the unauthorized practice of medicine, at least to the extent this claim is brought under N.R.S. 630.400, are dismissed with prejudice because they could not possibly be cured by amendment.

### A. Standing

As a threshold matter, the Court finds that Plaintiff's Complaint must be dismissed because she does not allege that she is the administrator or executor of Morrison's estate as required by Nevada law.

All of Plaintiff's causes of action are asserted on behalf of her late husband, and Plaintiff requests various types of relief in her Complaint "to exonerate [her] husband." Compl. at 15. Therefore, it is clear that Plaintiff is asserting a survival action, in which "the estate administrator

stands in the shoes of the decedent" and may assert any claims—and is subject to all defenses—that attached to the deceased individual. Schwartz v. Wasserburger, 30 P.3d 1114, 1117 (Nev. 2001). A survival action is distinct from a wrongful death action, and each is set out separately in the Nevada code. See Alsenz v. Clark Cnty. Sch. Dist., 864 P.2d 285, 286-88 (Nev. 1993) (discussing these causes of action and concluding that the survival action statute does not apply in a wrongful death claim).

In Nevada, survival actions are governed by N.R.S. 41.100, which generally provides that "no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's executor or administrator." N.R.S. 41.100(1). Elsewhere in the Nevada Revised Statutes, "executor" is defined as "a person nominated in a will and appointed by the court to execute the provisions of the will and administer the estate of the decedent." N.R.S. 132.130. "Administrator" is defined as "a person not designated in a will who is appointed by the court to administer the estate." N.R.S. 132.040.[2] By contrast, in the same chapter of Nevada's code, the Legislature gave both official representatives *and* heirs the right to bring a wrongful death cause of action. See N.R.S. 41.085 ("When the death of any person . . . is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death . . . .").

The Court finds that Plaintiff cannot bring this action on her late husband's behalf unless she demonstrates that she is an official representative of his estate, meaning his executor or administrator. This conclusion is required by Nevada law, which explicitly limits the ability to bring survival actions to executors and administrators. This Court agrees with the Ninth Circuit that "[t]he Nevada legislature's decision to mention only estate representatives in [Section]

---

[2] Although these definitions are given in a separate title of the Nevada code (governing wills and estates), the Court will interpret the terms "executor" and "administrator" in the survival action statute as having the same meaning as in the context of wills and estates. Nothing in the statute suggests that these words have been ascribed a different meaning. See Savage v. Pierson, 157 P.3d 697, 703 (Nev. 2007) (when interpreting the Nevada code, "when the same word is used in different statutes that are similar with respect to purpose and content, the word will be used in the same sense, unless the statutes' context indicates otherwise," and "words that have a technical or special meaning are presumed to carry their technical or special meaning," unless it is clear that the legislature did not intend this result).

41.100(3) leads naturally to the conclusion that the right to bring a survival action in Nevada is limited to the duly appointed representatives of a deceased's estate." Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365, 370 (9th Cir. 1998). This is distinct from, for example, California's code, which explicitly gives heirs the right to bring a survival action if the deceased individual has no official representative. Cal. Civ. Proc. Code § 377.30.

Here, Plaintiff has not alleged in her Complaint that she is the administrator or executor of her husband's estate. Further, in her responses to Defendants' arguments relating to standing, Plaintiff does not state that she is an official representative of Morrison's estate, but rather that she has standing because she is a widow. As discussed above, however, in order to bring a survival action, Nevada law requires that the plaintiff be an administrator or executor of the deceased person's estate. Because Plaintiff has not shown that she has standing, her Complaint must be dismissed.[3]

### B. Leave to Amend

When dismissing a complaint, a court should grant leave to amend if the complaint could possibly be cured by additional factual allegations; however, "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (alteration in original) (quoting Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013)). Therefore, the Court finds it appropriate to also engage in review of Plaintiff's claims on their merits to determine whether leave to amend should be granted.

Here, the Court finds that Ms. Morrison must be given leave to amend for her negligence, defamation, and fraud claims. However, Ms. Morrison's claims for a HIPAA violation and for the unauthorized practice of medicine could not possibly be cured by amendment.

---

[3] The Court acknowledges that Plaintiff presented documents, both at the hearing on the Motions to Dismiss and in a subsequent filing to the Court, that would appear to indicate that she was named an official representative of her late husband's estate. However, this Order merely reflects the Court's rulings at the September 14, 2015 hearing and does not consider newly submitted evidence. Plaintiff is free to include additional facts relating to her standing to bring this case in her Amended Complaint. Further, even if the Court were to consider Plaintiff's documents, it would still dismiss her claims (with leave to amend for certain claims) for the reasons discussed below.

### 1. Negligence, Defamation, and Fraud Claims

In their motions, Defendants argue that Plaintiff's claims for negligence, defamation, and fraud are barred by the statute of limitations, the doctrine of discretionary-act immunity, and the economic loss doctrine. Defendants also argue that Plaintiff's claims are deficient because she has failed to adequately allege the elements of each of these causes of action. The Court finds that while they could potentially serve as a barrier to Plaintiffs' claims, Defendants' arguments regarding the statute of limitations, discretionary-act immunity, and the economic loss doctrine do not necessarily bar Plaintiff's claims at this time. The Court also finds it possible that Plaintiff could allege facts in an Amended Complaint that would state causes of action for negligence, defamation, and fraud.

#### *a. Statute of Limitations*

Defendants argue that these claims are barred by the statute of limitations. It is true that the events alleged in 1996 and 2007 would be past the limitations period, assuming the statute of limitations began to run on those dates. However, the Court finds that Plaintiff may be able to allege facts establishing that the statute of limitations should be tolled until the autopsy on her late husband revealed that he did not have HIV.

In an action such as this one where Plaintiff's claims are based on state law, the applicable statute of limitations and tolling rules are also determined by state law. Walker v. Armco Steel Corp., 446 U.S. 740, 744-46 (1980); Emrich v Touche Ross & Co., 846 F.2d 1190, 1199 (9th Cir. 1988). In Nevada, the general rule is that "a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." Petersen v. Bruen, 792 P.2d 18, 20 (Nev. 1990). However, under an exception known as the discovery rule, "the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." Id.

The Court finds it possible that Plaintiff may be able to allege additional facts demonstrating that the statute of limitations on her negligence, defamation, and fraud claims should be tolled under the discovery rule. Therefore, Ms. Morrison's claims are not necessarily barred at this time by the statute of limitations.

### b. Discretionary-Act Immunity

The Athletic Commission Defendants also argue that they are entitled to discretionary-act immunity under N.R.S. 41.032. This statute states, in relevant part:

> [N]o action may be brought . . . against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is:
>
> \*\*\*
>
> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

The Supreme Court of Nevada has adopted a two-part test, mirroring that of the discretionary function exception to the Federal Tort Claims Act, to evaluate whether discretionary-act immunity applies. Martinez v. Maruszczak, 168 P.3d 720, 728-29 (Nev. 2007). Under this test, certain governmental officials are immune from suit for acts or decisions that (1) "involve an element of individual judgment or choice and (2) [are] based on considerations of social, economic, or political policy." Id. at 729. Discretionary-act immunity may apply to decisions at all levels of government and even to frequent or routine decisions, "if the decisions require analysis of government policy concerns. However, discretionary decisions that fail to meet the second criterion of this test remain unprotected" by the doctrine. Id. This type of immunity protects decisions such as the one to create and operate a public hospital, but generally does not protect "a physician's diagnostic and treatment decisions," which ordinarily are not based on policy considerations. Id.

The Court finds that discretionary-act immunity does not serve as an absolute bar to Plaintiff amending her Complaint to attempt to allege claims against the Athletic Commission Defendants. Plaintiff could potentially allege facts in an Amended Complaint showing that the Athletic Commission Defendants made decisions that were not discretionary in nature or were not based on policy considerations. In addition, Plaintiff could attempt to allege facts showing

that the doctrine of discretionary-act immunity does not apply to her claims. See, e.g., Franchise Tax Bd. v. Hyatt, 335 P.3d 125, 139 (Nev. 2014) (N.R.S. 41.032 "does not protect a government employee for intentional torts or bad-faith misconduct"). Therefore, the Court finds that Plaintiff should be granted leave to amend her claims against the Athletic Commission Defendants.

### c. Economic Loss Doctrine

Defendants also argue that Ms. Morrison's negligence claim is barred by the economic loss doctrine. This doctrine states that generally, a plaintiff cannot bring a tort claim for "purely economic losses" absent a claim for personal injury or property damage. Terracon Consultants Western, Inc. v. Mandalay Resort Grp., 206 P.3d 81, 86 (Nev. 2009). "Purely economic loss is generally defined as the loss of the benefit of the user's bargain . . . without any claim of personal injury or damage to other property." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000), overruled on other grounds by Olson v. Richard, 89 P.3d 31, 31-33 (Nev. 2004). The purpose of the economic loss doctrine is "to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." Terracon, 206 P.3d at 86-87. The doctrine is also derived from the policy concern that tort liability for economic losses could deter "useful commercial activity," and that "[i]nstead, when economic loss occurs as a result of negligence in the context of commercial activity, contract law can be invoked to enforce the quality expectations derived from the parties' agreement." Id. at 87.

Exceptions to the economic loss doctrine exist "'in [a] certain categor[y] of cases when strong countervailing considerations weigh in favor of imposing liability,'" such as cases "where there is significant risk that 'the law would not exert significant financial pressures to avoid such negligence.'" Halcrow, Inc. v. Eighth Jud. Dist. Ct., 302 P.3d 1148, 1153 (Nev. 2013) (alterations in original) (quoting Terracon, 206 P.3d at 86, 88).

The Court finds that Plaintiff may be able to allege additional facts to save her negligence claim. While Plaintiff appears to assert only economic losses in her Complaint, it is possible that she could allege additional facts that would demonstrate that the doctrine is inapplicable to her claim. Therefore, Plaintiff shall have leave to amend her negligence claim.

### *d. Failure to State a Claim*

Finally, Defendants argue that Plaintiff has failed, in multiple ways, to adequately allege the elements of her negligence, defamation, and fraud claims.[4] The Court has reviewed each of these arguments and finds it possible that Plaintiff could save these claims by alleging additional facts. Therefore, these arguments do not serve as a basis for denying leave to amend.

### 2. HIPAA Claim

The Court determines that leave to amend must be denied for Plaintiff's HIPAA claim. Amendment of this claim would be futile because "HIPAA itself does not provide for a private right of action." Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1082 (9th Cir. 2007). Therefore, because private citizens are not entitled to sue in court for violations of the HIPAA statute, this claim is dismissed with prejudice.

### 3. Unauthorized Practice of Medicine

The Court determines that leave to amend must also be denied for Plaintiff's claim for the unauthorized practice of medicine to the extent it is asserted under N.R.S. 630.400. This statute provides for criminal penalties for individuals who practice medicine without a license or present false documents to the Board of Medical Examiners. The statute also explicitly authorizes the Board of Medical Examiners to issue citations, fines, and cease-and-desist orders to persons violating the statute.

This statute explicitly gives enforcement authority to the Board, and therefore does not contain a mechanism for private individuals to sue under it. However, it is not completely clear from the Complaint whether Plaintiff is attempting to allege a cause of action for the unauthorized practice of medicine under this statute or under other legal authority. Therefore, this claim is dismissed with prejudice insofar as it attempts to state a claim under N.R.S.

---

[4] See Athletic Comm'n Defs.' Mot. Dismiss at 8-9, Oct. 3, 2014, ECF No. 11 (arguing that Plaintiff has failed to state a claim for negligence because she did not allege that the Athletic Commission Defendants owed Morrison a duty); Quest Defs.' Mot. Dismiss at 16-17, Oct. 3, 2014, ECF No. 12 (arguing that Plaintiff has not alleged facts showing that Hiatt owed Morrison a duty); id. at 17-18 (contending that Plaintiff has not stated a defamation claim because she has not alleged that the Quest Defendants acted with actual malice and because Quest's statements are privileged); id. at 21-22 (arguing that Plaintiff has not established the elements of a fraud claim, nor has she satisfied the particularity requirements of Rule 9(b)).

630.400. However, Ms. Morrison shall have leave to amend if she is not pursuing a claim under that statute.

V.     CONCLUSION

For the reasons given above,

**IT IS ORDERED** that Defendants Nevada State Athletic Commission, Dr. Margaret Goodman and Marc Ratner's Motion to Dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART as described below.

**IT IS FURTHER ORDERED** that Defendants Quest Diagnostics Incorporated and John Hiatt's Motion to Dismiss (ECF No. 12) is GRANTED IN PART and DENIED IN PART as described below.

**IT IS FURTHER ORDERED** that Plaintiff Patricia Harding Morrison's Complaint (ECF No. 1) is DISMISSED. Dismissal is without prejudice, and with leave to amend, for Plaintiff's negligence, defamation, and fraud claims. Dismissal is with prejudice for Plaintiff's HIPAA claim and for her claim for the unauthorized practice of medicine to the extent it is brought under N.R.S. 630.400.

**IT IS FURTHER ORDERED** that Plaintiff shall have **30 days** from the date of entry of this Order to file an Amended Complaint that addresses the deficiencies identified by the Court in this hearing. If she does not do so, her claims may be dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Partial Summary Judgment against Defendants John Hiatt (ECF No. 40), Margaret Goodman (ECF No. 58), and Quest Diagnostics Incorporated (ECF No. 69) are DENIED WITHOUT PREJUDICE. Plaintiff may refile all or part of these motions at an appropriate time after the filing of her Amended Complaint, provided that they are based upon the allegations and causes of action Plaintiff may assert in her Amended Complaint and not on the original Complaint.

DATED: September 30, 2015.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**