1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                     * * *

7    PATRICIA HARDING MORRISON,                Case No. 2:14-cv-01207-RFB-PAL

8                          Plaintiff,                    ORDER

9          v.                                  (Mot Compel Disc Responses – Dkt. #96)

     QUEST DIAGNOSTICS INC., et al.,

10

                            Defendants.

11

12          This matter is before the Court on Defendant Quest Diagnostics Incorporated's Motion to

13   Compel Discovery Responses and Declaration of D. Faye Caldwell (Dkt. #96), filed December

14   14, 2015.  The court has considered the Motion, Morrison's Response (Dkt. #97), and Quest's

15   Reply (Dkt. #98).

16                                  **BACKGROUND**

17   **I.      The Amended Complaint.**

18          The Complaint (Dkt. #1) in this case was filed July 24, 2014.  An Amended Complaint

19   (Dkt. #79) was filed October 16, 2015.   The amended complaint asserts claims for: (1)

20   negligence; (2) defamation; (3) libel; (4) slander; (5) fraud; (6) negligent misrepresentation; (7)

21   intentional infliction of emotional distress; and (8) intentional interference with a contract.

22   Plaintiff Patricia Harding Morrison ("Morrison") filed suit individually and in her capacity as the

23   Executor/Administrator of the Estate of Tommy David Morrison, deceased.   The amended

24   complaint names Quest Diagnostics, a Nevada corporation, John Hiatt, an individual and resident

25   of the State of Nevada employed by Quest, Dr. Margaret Goodman, the Nevada State Athletic

26   Commission ("NSAC"), and Marc Ratner, an individual and resident of the State of Nevada

27   working for NSAC.  Complaint ¶¶2-5.

28

                                          1

Plaintiff is the widow of Tommy "The Duke" David Morrison, a former two-time heavyweight boxing champion of the world  *Id.* ¶11.  The amended complaint alleges that on February 10, 1996, hours before a scheduled fight between Tommy Morrison and Arthur "Stormy" Weathers in Las Vegas, Nevada, Tommy was diagnosed and persuaded by the Defendants that his blood was "harboring the HIV virus."  *Id.* ¶12.  Tommy Morrison was advised that he was contagious and that his blood was infected with the HIV virus as a direct result of a clinical laboratory report issued by Quest and Hiatt for the NSAC prior to the fight. *Id.*  Tommy Morrison was orally advised of the diagnosis February 10, 1996.  *Id.* ¶13.  The diagnosis caused the cancellation of the first fight of multiple fights scheduled to take place under a multi-million dollar fight contract Tommy Morrison signed with Don King.  *Id.*  The diagnosis ultimately led to an indefinite worldwide suspension of Tommy Morrison as a licensed boxer in the WBO.  *Id.*

The false diagnosis of HIV led to a downward spiral of Tommy's life and eventually what was likely his early death.  *Id.*  Tommy Morrison became universally criticized, criminalized, ridiculed, and was banished from a career in the sport he loved and helped to make popular worldwide.  *Id.*  Tommy Morrison died September 1, 2013, after suffering from septic shock over 21 months resulting from a hospital acquired blood infection, after surgeons accidentally left 12 feet of infected surgical gauze in Tommy Morrison's chest following a surgery for an insect bite.  *Id.* ¶15.  Plaintiff claims that Tommy Morrison's death was completely unrelated to any diagnosis of HIV virus or AIDS.  *Id.*  ¶16.  Blood draws before and after Tommy Morrison's death established that he did not have the HIV/AIDS virus, and no viral particles resembling HIV, or "budding retroviruses" were found.  *Id.* ¶¶17, 18.

After Tommy Morrison died, Plaintiff began her own inquiry into the facts and circumstances surrounding Tommy Morrison's diagnosis in 1996.  *Id.* ¶19.  On December 21, 2013, Plaintiff received an email from the attending physician for the scheduled 1996 Las Vegas fight.  *Id.* ¶20.  The email confirmed that the attending physician had never diagnosed Tommy Morrison as having the HIV virus, or being infected with HIV.  *Id.*  The email caused Plaintiff to launch an investigation into what really happened and why on February 10, 1996.  *Id.*

1    Since Plaintiff began investigating the truth behind what happened that night, she has

2    been met with silence, countless road blocks, refusals by various parties to answer simple

3    questions such as "who and with what diagnosed Tommy Morrison with the virus/HIV on

4    February 10, 1996?"   Defendants have filed motions for extension and for dismissal in an

5    attempt to silence the Plaintiff and halt her efforts to discover the truth, and to avoid giving

6    Plaintiff definitive answers to very simple questions *Id.* ¶21.

7    **II.    The Parties' Positions.**

8        **A.  The Motion to Compel.**

9        In the current motion, Defendant Quest seeks to compel Morrison to respond to Requests

10   for Production of Documents served November 13, 2015.  Specifically, Quest seeks to compel

11   responses to Request for Production Nos. 3, 4, 5, 30, 34, 38, 40 and 52, and Interrogatory Nos. 1

12   through 4, which request information and documents relating to Tommy Morrison's medical

13   condition, treatment, care and treating and medical records from 1996 through 2013.  Quest also

14   seeks an order compelling Morrison to respond to Request for Production Nos. 24 through 29,

15   31, 32 and 50, and Interrogatory Nos. 5 and 8, which seek information and documents relating to

16   damages in this matter, and Morrison's damages calculations.   Quest also seeks to compel

17   Morrison to respond to Request for Production Nos. 1, 2, 16, 17, 19, 20, 21, 22, 23, 33 and 51,

18   which seek documents and information, including written communications, related to the

19   knowledge of and statements made by both Morrison and Tommy Morrison.  The court should

20   also compel Morrison to respond to Request for Production Nos. 5 through 15, 18, 21, and 22

21   which seek documents and written communications to, from, or between Morrison and Tommy

22   Morrison and various persons and entities including each of the Defendants in this case.  Finally,

23   the court should compel Morrison to respond to Quest's Request for Production Nos. 35, 36, 37,

24   42, 43 and 44 in Interrogatory Nos. 6 and 7 which seek information and documents related to

25   legal proceedings and criminal convictions involving Morrison and Tommy Morrison.

26       **B.  Plaintiff's Response.**

27       Morrison opposes the motion arguing counsel for Quest did not attempt to resolve this

28   matter in good faith, but was intent on filing a motion to compel.  Morrison also argues that the

3

resources of the State of Nevada and this court should not be wasted on resolving these discovery disputes.  Morrison contends that the claims she has raised in this case are the direct result of events that took place in Las Vegas, Nevada, and that "the discovery process of this case at hand does not support the sweeping and contentious discovery Defendant Quest seeks to control and to intimidate this Court of Las Vegas, Nevada."

Morrison repeats her complaint allegations that on February 10, 1996, hours before a scheduled fight between Tommy Morrison and Arthur "Stormy" Weathers in Las Vegas, Nevada, Tommy Morrison was advised "to accept A QUEST DOCUMENT/laboratory printout, as a 'diagnosis' that his blood was 'harboring the HIV virus'."  Tommy Morrison was advised that he was contagious in and out of the ring based on a Quest laboratory document.  The Quest laboratory document was the immediate cause of: (1) the cancellation of the fight that night; (2) the cancellation of a multi-million dollar fight contract; (3) an indefinite worldwide suspension; (4) the stripping of Morrison's boxing license; (5) the overruling of a licensed physician's clinical examination of Tommy Morrison who found him physically and mentally fit to fight; (6) the Nevada State Athletic Commission overruling the medical clearance of the physician; (7) the negligence and inability of the Nevada State Athletic Commission to interpret the Quest document; (8) the negligence of Quest, Hiatt, Ratner and the Nevada State Athletic Commission in failing to advise Tommy Morrison of the disclaimers and warnings of the tests used by the Defendant; (9) the negligence of Quest, Hiatt, Ratner and the Nevada State Athletic Commission in failing to advise Tommy Morrison that a clinical laboratory report, will never provide for a negative HIV test or even a positive HIV test; (10) cause Tommy Morrison to become universally criticized, criminalized, and ridiculed; and (11) in 2007 in Las Vegas, Nevada, Goodman, Hiatt and the Nevada State Athletic Commission, Quest and Ratner allowed the Quest document to be publicized again repeating the same allegations that took place on February 10, 1996, in Las Vegas, Nevada.

The opposition reiterates claims that Defendants' answers to interrogatories establish that a Quest laboratory printout or report is not an accurate or true diagnosis of any disease.  The court should provide Morrison relief by finding that Defendants should never again overrule a

4

license physician's recommendation to allow an applicant to receive a Nevada State Athletic Commission license to participate in his or her sport.  The court should require John Hiatt to make a widely-public statement that while he has a Ph.D. as an organic chemist, he is not a licensed medical doctor, licensed to practice medicine, nor a board certified pathologist.  The court should also grant Morrison's relief based on Defendant Ratner's answers to interrogatories that Defendant shall never again mandate or accept a clinical laboratory report or printout as a diagnosis of any disease to prevent someone from being licensed to box.  The court should also grant Plaintiff relief against Defendants requiring them to adhere to the test kit manufacturing company's disclaimer that the test kit is not utilized to diagnose or determine HIV, and that these disclaimers never again be concealed.

Morrison stands on her objections to discovery in dispute in the motion to compel.  She believes that counsel for Quest is engaging in an apparent strategy to bring as many disputes as possible before the court rather than trying to resolve the disputes through any discussions.  The motion to compel is overbroad on its face and concludes that the motion to compel, "as authorized by defense counsel Faye Caldwell from Houston, Texas does not belong before this court in Las Vegas, Nevada."

**C. Defendants' Reply.**

Quest's reply reiterates arguments that the discovery sought is relevant and discoverable within the meaning of Rule 26(b)(1), that Morrison's general objections are invalid as a matter of law, and that it met its burden of attempting to resolve these disputes without court intervention before filing the motion to compel.

## DISCUSSION

**I.   Applicable Law.**

**A.  Meet and Confer Requirements.**

Pursuant to Local Rule 26-7(b), a discovery motion may only be filed after the moving party has attempted in good faith to resolve any disputes without the Court's intervention, and the motion must contain a certification of the moving party's efforts.  Id.

Local Rule 26-7(b) provides:

> Discovery motions will not be considered unless a statement of moving counsel is attached thereto certifying that, after personal consultation and sincere effort to do so, counsel have been unable to resolve the matter without court intervention.

A threshold issue in the review of any motion to compel is whether the movant made adequate efforts to resolve the dispute without court intervention. Federal Rule of Civil Procedure 37(a)(1) requires that the party bringing a motion to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Similarly, Local Rule 26–7(b) provides that "[d]iscovery motions will not be considered unless a statement of the movant is attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have not been able to resolve the matter without Court action."

Judges in this district have held that "personal consultation" means the movant must "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). The consultation obligation "promote[s] a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus matters in controversy before judicial resolution is sought." *Nevada Power v. Monsanto*, 151 F.R.D. 118, 120 (D. Nev. 1993). To meet this obligation, parties must "treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes." *Id*. This is done when the parties "present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions." *Id*. To ensure that parties comply with these requirements, movants must file certifications that "accurately and specifically convey to the court who, where, how, and when the respective parties attempted to personally resolve the discovery dispute." *ShuffleMaster,* 170 F.R.D. at 170. Courts may look beyond the certification made to determine whether a sufficient meet-and-confer actually took place. See, e.g., *F.D.I.C. v. 26 Flamingo, LLC*, 2013 WL 2558219, *1 (D. Nev. June 10, 2013) (quoting *De Leon v. CIT Small Business Lending Corp.*, 2013 WL 1907786 (D. Nev. May 7, 2013)).

Here, defense counsel claims that Plaintiff requested all communications be in writing and has refused to communicate by telephone. Morrison's objection does not dispute this. From reviewing the exchange or correspondence, it is clear that Morrison took the position that no additional response was required. She takes the same position in response to the motion to compel. The moving Defendants December 7, 2015 letter described why they believed the discovery requested was relevant and discoverable. However, the letter gave Morrison and unreasonable amount of time to respond and threatened a motion to compel if she did not respond by 5:00pm December 9, 2015. The letter did not comply with the meet and confer standards articulated in *ShuffleMaster* and *Nevada Power*.

Ordinarily, the court must award sanctions against a party failing to comply with her discovery obligations if a motion to compel is granted or discovery is provided after a motion to compel is filed.. See Fed. R. Civ. P 37(a)(5)(A). There are three exceptions to a mandatory award of costs and attorneys' fees to the prevailing party. One exception is if the movant fails to comply with its good faith meet and confer obligations. Rule 37(a)(5)(A)(iii). The court will therefore not consider sanctions for Morrison's failure to provide substantive responses pursuant to Rule 37(a)(5)(A). However, the parties are clearly at loggerheads about whether Defendants are entitled to any of the discovery moving Defendants seek. The court will therefore decide the parties' disputes on the merits to avoid further motion practice.

**B. Fed. R. Civ. P. 26.**

Rule 26 of the Federal Rules of Civil Procedure permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery is not limited to admissible information. *Id.* However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." *Id.*

In deciding whether to restrict discovery under Rule 26(b)(2)(C), "the court should consider the totality of the circumstances, weighing the value of the materials sought against the burden of providing it, and taking into account society's interests in furthering the truth-seeking function in the particular case before the court." *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th

Cir. 2002) (internal quotations omitted)); *See* also *Rowlin v. Alabama Dep't Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001) ("courts have a duty to pare down overbroad discovery requests under Rule 26(b)(2)….  The court should consider the totality of the circumstances, weighing the value of the materials sought against the burden of providing it, discounted by society's interests in furthering the truth seeking function.") (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990)).

Since in late 1970s, the Supreme Court and the Advisory Committee on the Civil Rules have encouraged trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse.  The trial courts have been urged to actively manage discovery to accomplish the goal of Rule 1 of the Federal Rules of Civil Procedure—"to secure the just, speedy, and inexpensive determination of every action and proceeding."

In 1983, Rule 26 was amended to add subsection (g), which provides that a lawyer filing a discovery request, response or objection certifies by signing the document that it is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 26 (g)(1)(B)(ii).  A lawyer signing a discovery document also certifies that it is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."  Fed. R. Civ. P. 26(g)(1(B)(iii).

The Advisory Committee Notes for the 1983 amendments to Rule 26 emphasize that the elements of Rule 26(b)(1)(iii) were intended to address the problems of disproportionate discovery.  Federal judges were urged to evaluate the nature of the case, the limitations on a financially weak litigant to bear the burden of expensive discovery, and the need to prevent discovery from becoming a "war of attrition or as a device to coerce a party, whether financially weak or affluent."  97 F.R.D. 165, 218 (1983).  Rule 26(g) was added to address the reluctance of judges to impose sanctions on attorneys who abuse the discovery rules.  *See* Brasil, *Civil Discovery: Lawyers' Views of its Effectiveness, Principal Problems and Abuses,* American Bar Foundation (1980).  As one well-respected treatise observed, "Rule 26(b) was amended in 1983 to promote judicial limitation of the amount of discovery on a case-by-case basis to avoid abuse

8

1   or overuse of discovery through the concept of proportionality."   8 Charles Alan Wright &

2   Arthur R. Miller, *Federal Practice & Procedure* § 2008.1 (3d ed. 2015).   The Advisory

3   Committee notes reported that "Ruled 26(g) makes explicit the authority judges now have to

4   impose appropriate sanctions and requires them to use it.   This authority derives from Rule 37,

5   28 U.S.C. § 1927, and the court's inherent power."  (citations omitted.)

6       By 1997, nearly one-third of the lawyers surveyed by the Federal Judicial Center

7   endorsed narrowing the scope of discovery as a means of reducing litigation expense.  *See* D.

8   Stienstra*, Implemental of Disclosure in United States District Courts, with Specific Attention to*

9   *Courts' Responses to Selected Amendments to Federal Rule of Civil Procedure 26* (Federal

10   Judicial Center, March 30, 1998 at 44).

11       In 1998, the Supreme Court wrote that "Rule 26 vests the trial judge with broad

12   discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v.*

13   *Britton*, 523 U.S. 574, 599 (1998).  The Supreme Court recognized that under Rule 26(b)(2), the

14   trial court may, on its own motion, limit the frequency or extent of use of discovery methods if it

15   determines the burden or expense of proposed discovery outweighs its likely benefits.  *Id*.  Rule

16   26(c) gives the trial court authority on motion, or on its own initiative, to limit the time, place,

17   and manner of discovery, or bar discovery altogether on certain subjects, as required "to protect a

18   party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*.

19   Similarly, under Rule 26(d), the court may set the timing and sequence of discovery.  *Id*.  The

20   *Crawford-El* decision emphasized that the trial court has broad discretion under Rule 26 in

21   managing discovery "to facilitate prompt and efficient resolution of the lawsuit." *Id.*

22       In 2000, Rule 26 was again amended to call attention to the limitations of Rule

23   26(b)(2)(i), (ii) and (iii).  The Advisory Committee Notes indicate that the Advisory Committee

24   was repeatedly told "that courts have not implemented these limitations with the vigor that was

25   contemplated."  192 F.R.D. 340, 390 (2000).  Thus, Rule 26 was amended to add an "otherwise

26   redundant cross-reference . . . to emphasize the need for active judicial use of subdivision (b)(2)

27   to control excessive discovery." *Id.* (citing *Crawford-El*, 523 U.S. at 598).

28

1        On December 31, 2015, Chief Justice John Roberts issued his Year-End Report on the
2    Federal Judiciary.  He addressed the 2015 amendments to the Federal Rules of Civil Procedure at
3    length.  The Chief Justice traced the "elaborate and time-consuming" procedure for promulgating
4    and amending the rules which began in 2010 when the Advisory Committee on the Civil Rules
5    sponsored a symposium on civil litigation attended by federal and state judges, law professors,
6    plaintiff and defense lawyers, and representatives from business, government, and public interest
7    organizations.  The symposium identified the need for procedural reforms to: (1) encourage
8    greater cooperation; (2) focus discovery on what is truly needed to resolve cases; (3) engage
9    judges in early and active case management; and (4) address serious problems associated with
10   vast amounts of electronically stored information.

11       The Chief Justice's year-end report wrote that the changes that went into effect on
12   December 1, 2015, "may not look like a big deal at first glance, but they are."  It was the reason
13   he decided to highlight them in his report.  Rule 1 was expanded to add eight words to emphasize
14   "the obligation of judges and lawyers to work cooperatively in controlling the expense and time
15   demands of litigation."  Rule 1 now directs that the Federal Rules "should be construed,
16   administered, *and employed by the court and the parties* to secure the just, speedy, and
17   inexpensive determination of every action and proceeding."  (Emphasis in the original report.)
18   Chief Justice Roberts stated that lawyers representing adverse parties "have an affirmative duty
19   to work together, and with the court, to achieve prompt and efficient resolutions of disputes."

20       The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits
21   on discovery through increased reliance on the common-sense concept of proportionality."  The
22   fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their
23   discovery requests to the requisites of a case."  The pretrial process must provide parties with
24   efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or
25   wasteful discovery.  This requires active involvement of federal judges to make decisions
26   regarding the scope of discovery.  Chief Justice Roberts observed that the 2015 amendments to
27   the civil rules "are a major stride towards a better federal court system," but accomplishing the
28   goal of Rule 1 will only occur "if the entire legal community, including the bench, bar, and legal

1    academy, step up to the challenge of making real change."  He urged judges "to take on a

2    stewardship role, managing their cases from the onset rather than allowing parties alone to

3    dictate the scope of discovery" and to actively engage in early case management to "identify the

4    critical issues, determine the appropriate breadth of discovery, and curtail dilatory tactics,

5    gamesmanship, and procedural posturing."  He urged judges and lawyers to "engineer a change

6    in our legal culture that places a premium on the public's interest in speedy, fair, and efficient

7    justice."

8        **II.    Analysis and Decision.**

9            The court is mindful of the need for active judicial management to tailor discovery to the

10   needs of the case to accomplish the goal of Rule 1.  Defendants are entitled to discovery from

11   Morrison about her claims and alleged damages.  However, the majority of Defendants discovery

12   requests are patently overbroad on their face.  The motion to compel is granted in part and denied

13   in part as explained below.

14           In multiple filings with the court, Morrison has attempted to restrict discovery in this case

15   to what she calls "the issues at hand."  She repeatedly claims that the only issue in this case is the

16   question of "who and what negligently diagnosed Tommy with virus/HIV on February 10, 1996

17   in Las Vegas, Nevada."  She asks that the court restrict discovery to what happened in Las

18   Vegas, Nevada that one day.  However, her claims are actually much, much broader.  Defendants

19   are entitled to discovery to test the claims she raises in her first amended complaint, any

20   information or documents she may use to support her liability claims, and her request for $110

21   million dollars in damages for what occurred from February 10, 1996, until Tommy Morrison's

22   death in 2013.   She has also asserted libel and slander claims after Tommy Morrison's death

23   based on allegations defamatory and libelous statements were repeated. Plaintiff has not

24   provided substantive responses to virtually any of the Defendants' discovery requests.  She has

25   asserted boilerplate objections with limiting disclaimers attempting to limit any substantive

26   response to the date Quest allegedly issued the report which resulted in the cancellation of the

27   fight.   Her responses contain pages of disclaimers and definitions reframing the requests.

28   Plaintiff has clearly not complied with her discovery obligations in this case.

1    Plaintiff asks that the court restrict discovery in this case to the Quest laboratory report

2    issued February 10, 1996, which allegedly indicated Tommy Morrison had HIV and/or AIDS

3    which resulted in the cancellation of the fight that night.   Morrison's claims are not limited to a

4    cancelled fight in Las Vegas on February 10, 1996.  She alleges that the Quest laboratory report

5    issued February 10, 1996, set in motion a chain of events that ruined Tommy Morrison's boxing

6    career, caused the cancellation of multiple fights scheduled to take place under a multi-million

7    dollar fight contract signed with Don King, led to his indefinite worldwide suspension as a

8    licensed boxer in the WBO, caused a downward spiral of his life, and eventually caused his early

9    death.

10    Plaintiff has alleged that as a result of this Quest laboratory report, Tommy Morrison

11    because universally criticized, criminalized, ridiculed, and was banished from a career in the

12    sport he loved.  Plaintiff claims that Tommy Morrison's death was completely unrelated to any

13    diagnosis of HIV and/or AIDS, that tests taken before and after his death established that he did

14    not have the HIV/AIDS virus, and that the Quest laboratory report caused more than $110

15    million dollars in damages.  Plaintiff has clearly put in issue whether or not Tommy Morrison

16    was ever had or was diagnosed with HIV and/or AIDS, why Tommy Morrison never fought

17    again, and why he died.  Whether any physician or health care provider ever cleared Tommy

18    Morrison to fight on or after February 10, 1996 is at issue. Plaintiff has put in issue what

19    damages flow from Defendants' alleged misconduct and tortious acts.  How she arrived at her

20    $110 million dollar damages calculation is at issue.

21    However, the vast majority of the Defendants' discovery requests are patently overbroad

22    on their face.  Defendants' motion to compel does not provide the court with any information

23    about who the individuals and entities named in the requests are to enable  the court to evaluate

24    whether the requests seek relevant and discoverable information.  Most of the requests have no

25    temporal limitation at all.  Many of the requests are not limited to the subject matter of the

26    Plaintiff's claims or Defendants' unarticulated defenses.   A number of the requests for

27    production are outright offensive in requesting, for example, all HIV test results of Patricia

28    Harding Morrison, and "any documents" related to any criminal offense that Morrison or

12

1  Tommy Morrison "was accused or charged".   The court finds moving Defendants did not

2  comply with their certification obligations under Rule 26(g).

3      Still, Defendants are entitled to discovery about information supporting Plaintiff's claims

4  and any documents supporting her claims. The court will not compel Morrison to execute

5  releases or authorization forms.   However, the court will compel Morrison to provide full and

6  complete answers to Interrogatory Nos. 1, 2, 5, and 8.   Plaintiff's objections to these

7  interrogatories are overruled.   The court will deny Defendants' request to compel further

8  responses to the remaining interrogatories.

9      The court will also compel Morrison to supplement her responses, limited to the period

10  from February 10, 1996, to September 1, 2013, to Request for Production Nos. 4, 6, 7, 10, 11,

11  12, 13, 18, 24, 25, 26, and 27.  Plaintiff will also be required to produce any medical records or

12  lab reports after Tommy Morrison's death which she believes support her claims that tests

13  performed after his death confirmed he did not have HIV or AIDS or "budding retroviruses".

14  She will also be compelled to produce any documents that she believes supports her claims that

15  either she or the estate suffered monetary damages for Defendants conduct after Tommy

16  Morrison's death.

17      The court will compel Morrison to supplement her response to Request for Production

18  No. 31 to produce any application for disability benefits made by Tommy Morrison to the Social

19  Security Administration from February 10, 1996, to September 1, 2013.  Plaintiff shall produce

20  any autopsy or medical examiner's report in her care, custody and control regarding any findings

21  for the death of Tommy Morrison responsive to Request for Production No. 34, but shall not be

22  required to produce "all documents related to" an autopsy or medical examiner's findings.

23  Plaintiff is also compelled to produce documents responsive to Request for Production Nos. 49,

24  50 and 53 to the extent that Plaintiff claims the items requested support her complaint

25  allegations.  Defendants' motion to compel the remaining requests are denied.

26      Plaintiff must search for and produce documents in her care, custody and control.  If

27  Plaintiff has no documents responsive to one or more of the requests the court has compelled her

28  to supplement, she must simply say so.  By signing a response to a discovery request, a "party

13

certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry" that the response is complete and correct at the time it is made. Plaintiff must do her best to answer the interrogatories for which the court is compelling her to supplement her answers. If she truly does not know the answer to the question, that is an appropriate response. However, she must disclose what she does know or believes she knows. Plaintiff will be precluded from supporting her claims against the Defendants or submitting evidence supporting her claims or damages with any testimony or documents that she does not disclose in discovery.

Plaintiff is also cautioned that failure to comply with the court's discovery order may result in additional sanctions including case ending sanctions. She must do her best to respond and provide the information requested. Plaintiff is advised that Rule 37(a)(4) expressly provides that "an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer or respond." Sanctions may include that Plaintiff be prohibited from supporting or opposing claims or defenses and prohibited from introducing designated matters into evidence. The court may also strike her complaint in whole or in part, stay further discovery until the order compelling discovery is obeyed, recommend dismissal of the action or proceeding in whole or in part, or enter default judgment against the disobedient party. The court may also impose contempt and monetary sanctions.

For the reasons stated,

**IT IS ORDERED** that:

1. Defendants' Motion to Compel (Dkt. #96) is **GRANTED in part** and **DENIED in part consistent with this decision and order**.

2. Plaintiff shall provide full and complete supplemental answers to Interrogatory Nos. 1, 2, 5, and 8. Plaintiff's objections and limiting disclaimers are overruled.

3. Plaintiff shall supplement and provide full and complete responses to Request for Production Nos. 4, 6, 7, 13, 18, 24, 25, 26, 27, 31, 34, 49, 50 and 53. Plaintiff's objections and limiting disclaimers are overruled.

4.  Plaintiff shall have until **February 10, 2016**, to serve her supplemental discovery responses as ordered.

5.  Failure to timely comply with this order by providing full and complete supplemental responses to the best of Plaintiff's ability may result in sanctions up to and including a recommendation of case ending sanctions to the district judge.

6.  Defendants' request to compel further answers to interrogatories and requests for production other than as compelled in this order is **DENIED**.

DATED this 27th day of January, 2016.


_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE