1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

PATRICIA HARDING MORRISON,

8

Plaintiff,

9

v.

10

QUEST DIAGNOSTICS INC., et al.,

11

Defendants.

Case No. 2:14-cv-01207-RFB-PAL

ORDER

(Objection to Discovery – Dkt. #90)

12

This matter is before the Court on Plaintiff Patricia Harding Morrison's Objection re

13

Discovery (Dkt. #90), filed November 19, 2015, which the court construes as a motion to quash

14

subpoenas.   This proceeding was referred to the undersigned pursuant to 28 U.S.C. §

15

636(b)(1)(A) and LR IB 1-3 and 1-9.  The court has considered the Objection, Response by

16

Defendants John Hiatt and Quest Diagnostics (Dkt. #93), filed December 3, 2015, and Ms.

17

Morrison's Reply (Dkt. #94) filed December 7, 2015.

18

**BACKGROUND**

19

**I.      The Amended Complaint.**

20

The Complaint (Dkt. #1) in this case was filed July 24, 2014.  An Amended Complaint

21

(Dkt. #79) was filed October 16, 2015.   The amended complaint asserts claims for: (1)

22

negligence; (2) defamation; (3) libel; (4) slander; (5) fraud; (6) negligent misrepresentation; (7)

23

intentional infliction of emotional distress; and (8) intentional interference with a contract.

24

Plaintiff Patricia Harding Morrison ("Morrison") filed suit individually and in her capacity as the

25

Executor/Administrator of the Estate of Tommy David Morrison, deceased.   The amended

26

complaint names Quest Diagnostics, a Nevada corporation, John Hiatt, an individual and resident

27

of the State of Nevada employed by Quest, Dr. Margaret Goodman, the Nevada State Athletic

28

Commission ("NSAC"), and Marc Ratner, an individual and resident of the State of Nevada working for NSAC.  Complaint ¶¶2-5.

Plaintiff is the widow of Tommy "The Duke" David Morrison, a former two-time heavyweight boxing champion of the world  *Id.* ¶11.  The amended complaint alleges that on February 10, 1996, hours before a scheduled fight between Tommy Morrison and Arthur "Stormy" Weathers in Las Vegas, Nevada, Tommy was diagnosed and persuaded by the Defendants that his blood was "harboring the HIV virus."  *Id.* ¶12.  Tommy Morrison was advised that he was contagious and that his blood was infected with the HIV virus as a direct result of a clinical laboratory report issued by Quest and Hiatt for the NSAC prior to the fight. *Id.*  Tommy Morrison was orally advised of the diagnoses February 10, 1996.  *Id.* ¶13.  The diagnosis caused the cancellation of the first fight of multiple fights scheduled to take place under a multi-million dollar fight contract Tommy Morrison signed with Don King.  *Id.*  The diagnosis ultimately led to an indefinite worldwide suspension of Tommy Morrison as a licensed boxer in the WBO.  *Id.*

The false diagnosis of HIV led to a downward spiral of Tommy's life and eventually what was likely his early death.  *Id.*  Tommy Morrison became universally criticized, criminalized, ridiculed, and was banished from a career in the sport he loved and helped to make popular worldwide.  *Id.*  Tommy Morrison died September 1, 2013, after suffering from septic shock over 21 months resulting from a hospital acquired blood infection, after surgeons accidentally left 12 feet of infected surgical gauze in Tommy Morrison's chest following a surgery for an insect bite.  *Id.* ¶15.  Plaintiff claims that Tommy Morrison's death was completely unrelated to any diagnosis of HIV virus or AIDS.  *Id.*  ¶16.  Blood draws before and after Tommy Morrison's death established that he did not have the HIV/AIDS virus, and no viral particles resembling HIV, or "budding retroviruses" were found.  *Id.* ¶¶17, 18.

After Tommy Morrison died, Plaintiff began her own inquiry into the facts and circumstances surrounding Tommy Morrison's diagnosis in 1996.  *Id.* ¶19.  On December 21, 2013, Plaintiff received an email from the attending physician for the scheduled 1996 Las Vegas fight.  *Id.* ¶20.  The email confirmed that the attending physician had never diagnosed Tommy

1   Morrison as having the HIV virus, or being infected with HIV. *Id.* The email caused Plaintiff to

2   launch an investigation into what really happened and why on February 10, 1996. *Id.*

3   Since Plaintiff began investigating the truth behind what happened that night, she has

4   been met with silence, countless road blocks, refusals by various parties to answer simple

5   questions such as "who and with what diagnosed Tommy Morrison with the virus/HIV on

6   February 10, 1996?" Defendants have filed motions for extension and for dismissal in an

7   attempt to silence the Plaintiff and halt her efforts to discover the truth, and to avoid giving

8   Plaintiff definitive answers to very simple questions *Id.* ¶21.

9   **II.    The Parties' Positions**

10         **A. Morrison's Objection to Discovery**

11         In the current objection, Ms. Morrison seeks to quash 23 subpoenas issued to produce

12   documents, information or objects pursuant to Fed. R. Civ. P. 45 served on various custodians of

13   records. The subpoenas were issued November 11, 2015, and served on Plaintiff November 16,

14   2015. Copies of the subpoenas and cover letters dated November 11, 2015, are attached as

15   exhibits to the motion. Morrison objects that the subpoenas were issued in violation of Fed. R.

16   Civ. P. 45 on various grounds. First, Morrison argues that the subpoenas were dated and served

17   on various individuals and entities November 11, 2015, without prior legal notice to Morrison as

18   required by Rule 45(a)(4) which requires prior notice not less than 15 days of any commanded

19   production of documents, things or inspection of premises before trial. Morrison also objects

20   that the subpoenas seek documents protected by the Health Insurance Portability and Accounting

21   Act of 1996 ("HIPAA"), and request personal health information protected by HIPAA. The

22   Defendants did not obtain a court order for personal health information and simply mailed copies

23   of the various subpoenas to her after they had already issued and served the subpoenas on the

24   various health care providers. The subpoenas create the impression the providers must

25   immediately provide Quest and Hiatt with all requested medical records of Plaintiff's late

26   husband, Tommy Morrison, or else appear for a deposition on December 11, 2015.

27         Ms. Morrison characterizes the subpoenas as an attempt by Quest and Hiatt to retrieve

28   medical information by "breaking and entering." Morrison argues that issuance of the subpoenas

in the manner conducted in this case is unethical and renders service of the subpoenas a nullity. Many health care providers are unrepresented by counsel and automatically send records in response to a subpoena, destroying any opportunity of parties to obtain a protective order, object or review records prior to production.  Under these circumstances, the court should quash these subpoenas.

Finally, Morrison argues that what is at issue in this case is who diagnosed her late husband with HIV in Las Vegas on February 10, 1996.  In this case, Morrison is challenging the accuracy of Quest's test.  Quest and Hiatt have denied any liability for the conduct of a third party, but are now apparently trying to pass the buck by obtaining information about tests conducted elsewhere by others without proper notice to Plaintiff.

### B.  Defendants' Response.

Defendants Quest and Hiatt filed a Response (Dkt. #93).  The response points out that Plaintiff brought this suit on behalf of the estate of her husband seeking $110 million dollars from the Defendants on claims of negligence, defamation, libel, slander, fraud, negligent representation, intentional infliction of emotional distress, and intentional interference with contract.  The gravamen of Morrison's claims is that Quest and Hiatt incorrectly and inaccurately tested and/or diagnosed a blood specimen submitted by Tommy Morrison for testing required by the NSAC.  Morrison claims that Quest's laboratory tests were inaccurate, that Tommy Morrison never had and/or was never diagnosed with HIV/AIDS, that he was HIV negative when he died in 2013, and that he died prematurely due to Quest Diagnostics' alleged negligence.

These non-party Rule 45 subpoenas were sent November 11, 2015, for service on various non-party health providers who treated Tommy Morrison from February 1996, until his death in 2013.  The compliance date for the subpoenas was December 11, 2015.  Copies of the non-party subpoenas and communications were mailed to Ms. Morrison by first class mail, return receipt requested, on November 11, 2015.  Morrison acknowledges she received copies of these subpoenas on November 16, 2015.  Her objections were filed November 19, 2015.

Thus, the Defendants' claim that the subpoenas comply with Rule 45.  Fed. R. Civ. P. 45 does not require 15 days prior notice to an opposing party.  However, Morrison received more

4

than 15 days' notice before compliance with the subpoenas was required and had an opportunity to object which she has done.  The subpoenas were sent to a process server for service on the custodians and the responses indicate that no return of service for any of the custodians was perfected prior to November 13, 2015.

Additionally, on the merits, the Defendants argue that the subpoenas seek relevant and discoverable information.  In this case, Morrison claims that Tommy Morrison was never treated for or diagnosed with HIV, died without ever having HIV or AIDS, and therefore Tommy Morrison's medical records from February 10, 1996, to his death in 2013, are relevant and discoverable as a matter of law.

The Defendants also point out that serving a notice for a custodian of records deposition is an appropriate means to obtain records pursuant to Rule 45.  Counsel for Quest will not be appearing for any of the custodial depositions.  Rather, the custodians are anticipated to send responsive records to counsel for Quest Diagnostics who will provide copies of those records to Morrison promptly upon receipt.

Defendants also argue that, to the extent the subpoenas seek documents protected by HIPAA or some physician-patient privilege, which Defendants deny, Morrison waived any such protections by placing Tommy Morrison's medical condition at issue in this matter.  Morrison's claims are based on assertions about whether or not Tommy Morrison had HIV/AIDS on February 10, 1996, through the time of his death.  As such, she has placed his medical condition related to HIV testing or diagnosis directly as issue.  NRS 49.245(3) specifically provides that there is no doctor-patient privilege regarding written medical or hospital records relevant to the issue of the condition of the patient in any proceeding in which the condition is an element of a claim or defense.  Defendants also dispute that HIPAA prohibits Defendants from issuing and serving subpoenas on Tommy Morrison's health care providers for health care records.

### C. Morrison's Reply.

Morrison replies that the simple questions involved in this case are "who and with what negligently diagnosed Tommy Morrison with the virus/HIV in his blood on February 10, 1996, in Las Vegas, Nevada, that led to the cancellation of the fight against Arthur Weathers, the

cancellation of a multi-million dollar fight contract, and indefinite world-wide suspension." The reply reiterates arguments that the subpoenas were served in violation of Rule 45 because Morrison did not receive prior notice of the subpoenas before they were served and personal service was perfected on the non-party recipients of the subpoenas.

Morrison's reply summarizes her understanding of the Defendants' responses to discovery which, she contends, are damaging admissions and establish that Quest and Hiatt are wasting judicial economy with their non-party subpoenas. Morrison contends that Quest and Hiatt are trying to open the flood gates to allow their defense counsel from Houston, Texas to control this case and are perhaps trying to drag this case on for defense counsel's own financial benefit. The Defendants have "failed miserably to intimidate" Plaintiff and are desperately searching for someone outside of Las Vegas to blame for a cancelled fight that should have taken place on February 10, 1996, in Las Vegas, Nevada. Morrison argues that her hunches have been validated all along in this case and requests that the "subpoenas perfected by Defendants Hiatt and Quest are squashed."

Finally, Plaintiff requests that the court order discovery to be relevant and restricted to the events that took place on the soil of Las Vegas, Nevada on February 10, 1996, and "the concealment of the test kit warnings and the interpretation of the Quest clinical laboratory report."

## **DISCUSSION**

### I.     **Applicable Law.**

#### A.  **Fed. R. Civ. P. 26.**

Rule 26 of the Federal Rules of Civil Procedure permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery is not limited to admissible information. *Id.* However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." *Id.*

In deciding whether to restrict discovery under Rule 26(b)(2)(C), "the court should consider the totality of the circumstances, weighing the value of the materials sought against the burden of providing it, and taking into account society's interests in furthering the truth-seeking

function in the particular case before the court." *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotations omitted)); *See* also *Rowlin v. Alabama Dep't Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001) ("courts have a duty to pare down overbroad discovery requests under Rule 26(b)(2)…. The court should consider the totality of the circumstances, weighing the value of the materials sought against the burden of providing it, discounted by society's interests in furthering the truth seeking function.") (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990)).

As a general proposition, a party lacks standing under Rule 45(c)(3) of the Federal Rules of Civil Procedure to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena. *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *In re: Cree Inc. Securities Litig*, 220 F.R.D. 443 (M.D.N.C. 2004). A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the non-party are not grounds on which a party has standing to move to quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636-37 (C.D. Cal. 2005). A party may, however, move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought by a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshal Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) (deeming a party's motion to quash subpoenas issued  to non-parties as a motion for protective order under Rule 26(c)); *See* also *Moon*, 232 F.R.D. at 636-37.

**B.  Fed. R. Civ. P. 45**

Rule 45(a) contains the requirements for issuance of a subpoena in a case. Every subpoena must: state the court from which it issued; state the title of the action and its civil action number; and command the person to whom it is directed to attend and testify, produce

designated documents at a specified time and place, and set out the text of Rule 45(d) and (e). Fed. R. Civ. P. 45(a)(1)(A)(i-iv).  Rule 45(a)(C) authorizes issuance of a subpoena to command the production of documents and also require the attendance at a deposition, hearing or trial. Rule 45(C)(4) requires notice to other parties before subpoenas are served.  It provides:

> If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

Nevada Rule of Civil Procedure 45(b) requires prior notice to each party, not less than 15 days before service.  The federal rule does not, as Plaintiff claims, contain a 15 day prior notice requirement. The Advisory Committee Note to the 1991 Amendments to Rule 45 indicates that the purpose of the prior notice requirement "is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things."  Most federal courts that have addressed the issue of non-compliance with the prior notice provision of Rule 45 "have held that the consequences of untimely notice should not be an automatic quashing of the subpoena, at least in the absence of prejudice to the opposing party."  9A Wright & Miller, Federal Practice and Procedure § 2454, p. 406 (collecting cases).

Here, Defendants served Plaintiff by mail with all 23 subpoenas and cover letters the same day they were sent to a process server for service on the various custodians.  Defendants failed to comply with Rule 45(C)(4).  However, the subpoenas gave the custodians 30 days until December 11, 2015 to either produce responsive documents in advance or appear at a custodian of records deposition.  Defendants are correct that this is a common procedure for obtaining documents from non-parties, and ordinarily custodians produce the documents on or before the date of the deposition to avoid producing the documents and testifying at a deposition.  Plaintiff filed her objections before the time for complying with the subpoenas, and has had the opportunity to challenge them.   As explained below the court will quash or modify some or all of the subpoenas once more information about who these individuals and entities are and why Defendants believe they have relevant discoverable information.

**C.  Fed. R. Evid. 501 and NRS Chapter 49**

This case is in federal court on diversity jurisdiction because the Plaintiff and Defendants are citizens of different states.  Rule 501 of the Federal Rules of Evidence provides that in a civil case "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  All of Plaintiff's claims against the Defendants in this case are state claims, so Nevada state law of privilege applies. Nevada Revised Statute ("NRS") Chapter 49 addresses the doctor and patient privilege.  NRS 49.225 establishes the general rule of privilege.  "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications among the patient, the patient's doctor or persons who are participating in the diagnosis or treatment under the direction of a doctor, including members of the patient's family."  The doctor and patient privilege may be claimed "by the patient, by the patient's guardian or conservator, or by the personal representative of a deceased patient."  NRS 49.235.  NRS 49.245 sets forth the exceptions to the doctor and patient privilege.  One such exception applies to "written medical or hospital records relevant to an issue of the condition of the patient in any proceeding in which the condition is an element of a claim or defense."  NRS 49.245(3).

## II.    Analysis and Decision.

Twenty-three subpoenas to produce documents, information or objects were issued and served on various custodians of records pursuant to Rule 45(a)(4) in this case.  Plaintiff's objection attaches Exhibit A--one example and a cover letter addressed to the Arizona Boxing & MMA Commission dated November 11, 2015, with an attached subpoena seeking:

> Certified copies of the entirety of your file created on Tommy Morrison's amateur or professional boxer's license, including, but not limited to, copies of any and all documents, applications, questionnaires, applicant's history, photographs, notes, memoranda, correspondence (including emails and facsimiles), telephone messages, contracts, agreements, boxing license and/or book, report(s) of physical examination, medical authorizations, medical reports, healthcare providers' reports and consultations, x-ray reports, diagnostic study reports, EEG and EKG test results, lab reports and test results for any urine, blood or tissue samples submitted by Tommy Morrison (including HIV/AIDS, drug and/or alcohol tests), chain of custody forms, testing data, list of prescriptions and/or supplements, or records of any kind in your possession received or sent pertaining to Tommy Morrison, date of birth January 2, 1969, Social Security Number xxx-xx-6354.

Plaintiff's objection and Defendants' response to the motion reflect that subpoenas were issued and served on: (1) the Arizona Boxing and MMA Commission; (2) Stanley Bodner, M.D.;

1    (3) Jerry Bradley, M.D.; (4) Bryan Medical Center; (5) Carl Ferguson D.O.; (6) Dr. Bryan Flint;

2    (7) Fort Sanders Regional Medical Center; (8) Dr. Fouad Ghaly; (9) Health Information

3    Management-Nebraska Medicine; (10) Dr. Stephen Hennigan; (11) Dr. Mari Klausner; (12) Dr.

4    Brent Koprivica; (13) Laconte Medical Center; (14) Massachusetts General Hospital; (15) Dr.

5    James Nora; (16) Dr. Howard Reuben; (17) George Schuchmann; (18) Dr. Todd Simpson; (19)

6    Texas Combative Sports Program; (20) Dr. John Trapp; (21) Westley Medical Center; (22) West

7    Virginia Athletic Commission; and (23) Wyoming State Board of Mixed Martial Arts.

8         Although Defendants' opposition states the subpoenas were served on 23 separate non-

9    party healthcare providers, a number of these individuals and entities are not healthcare

10   providers.  The subpoenas issued to healthcare providers request:

11        Certified copies of the entirety of your records regarding **Tommy Morrison**,
          including but not limited to, copies of any and all documents, patient histories,

12        patient information, patient questionnaires, insurance records, correspondence
          (including e-mails and facsimiles), notes, telephone messages, memoranda, EMS

13        reports, diagnostic study reports, diagnostic films, lab reports, test results
          (including HIV/AIDS, drug and/or alcohol tests), chain of custody forms, testing

14        data, analysis data, data confirmation, back-up documentation to all tests,
          prescriptions, off-work slips, psychological notes, therapy notes, or records of any

15        kind in your possession, for all periods of time, regarding your examination,
          evaluation, testing and/or treatment of **Tommy Morrison**, date of birth January 2,

16        1969, Social Security No. xxx-xx-6354.

17        The subpoenas are extremely broad.  Although the Plaintiff's claims in this case date

18   from February 10, 1996, to the date of Mr. Morrison's death in September 2013, the subpoenas

19   duces tecum have no temporal limitations at all.  Neither side has provided the court with any

20   information about the vast majority of custodians upon whom these subpoenas were served.  The

21   court has no information about how the list of custodians was developed, and why the

22   Defendants believe these custodians have discoverable information about this case.  Because the

23   Plaintiff's objection and Defendants' response were filed before the time for complying with the

24   subpoenas, the court also has no information concerning whether some or all of the non-parties

25   served with the subpoenas have complied or produced responsive documents.

26        Plaintiff asks that the court restrict discovery in this case to the Quest laboratory report

27   issued February 10, 1996, which allegedly indicated Tommy Morrison had HIV and/or AIDS

28   which resulted in the cancellation of the fight that night.  However, Plaintiff's claims are much

broader.  Morrison's claims are not limited to a cancelled fight in Las Vegas on February 10, 1996.  She alleges that the Quest laboratory report issued February 10, 1996, set in motion a chain of events that ruined Tommy Morrison's boxing career, caused the cancellation of multiple fights scheduled to take place under a multi-million dollar fight contract signed with Don King, led to his indefinite worldwide suspension as a licensed boxer in the WBO, caused a downward spiral of his life, and eventually caused his early death.

Plaintiff has alleged that as a result of this Quest laboratory report, Tommy Morrison was universally criticized, criminalized, ridiculed, and was banished from a career in the sport he loved.  Plaintiff claims that Tommy Morrison's death was completely unrelated to any diagnosis of HIV and/or AIDS, that tests taken before and after his death established that he did not have the HIV/AIDS virus, and that the Quest laboratory report caused more than $110 million dollars in damages.  Plaintiff has clearly put in issue whether or not Tommy Morrison was ever had or was diagnosed with HIV and/or AIDS, why Tommy Morrison never fought again, and why he died.  Plaintiff has put in issue what damages flow from Defendants' alleged misconduct and tortious acts.

However, as indicated, the subpoenas duces tecum attached as exhibits to the objection are extremely overbroad in requesting "the entirety of your file" on Tommy Morrison without any temporal or subject matter limitation.  Defendants have not satisfied the court that the subpoenas were appropriately directed to all 23 custodians.  The Defendants have offered no justification for the breadth of the subpoenas.  The court will therefore require the Defendants to file a supplement to report why Defendants believe these non-parties have relevant and discoverable information; whether each of the non-parties has complied with the subpoenas; and if so, to provide a description of the documents produced, the time period for which over which the documents were produced, and whether any documents received from the various non-parties have been provided to the Plaintiff.  Defendants will be required to describe, with specificity, why Defendants believe each of the 23 custodians was likely to have relevant and discoverable information.

The court will reserve decision on whether to quash or modify some or all of the subpoenas once Defendants have filed the supplement as ordered. The court will also impose a temporary protective order precluding the Defendants from using any of the documents or information contained in the documents obtained pursuant to all 23 subpoenas duces tecum without further court authorization pending a hearing on the merits.

**IT IS ORDERED** that:

1. Defendants shall have until **February 10, 2016**, to file a supplement consistent with the requirements of this order.

2. Plaintiff shall have until **February 24, 2016**, to file any response to Defendants' supplement.

3. A hearing on the merits of this Objection (Dkt. #90) and the Motion for Protective Order (Dkt. #99) is set for **9:15 a.m., March 1, 2016**. The parties may appear telephonically**.** Those appearing telephonically are instructed to call Jeff Miller, Courtroom Deputy, at (702) 464-5420 **before 4:00 p.m., February 26, 2016** to indicate the name of the party participating and a telephone number where that party may be reached. The courtroom deputy will initiate the call.

4. A temporary protective order is entered precluding the Defendants from using any of the records or information received from the custodians of records at issue in this order until further order of the court and a hearing on the merits.

DATED this 27th day of January, 2016.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

12