1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PATRICIA HARDING MORRISON,

Plaintiff,

v.

QUEST DIAGNOSTICS INCORPORATED, et al.,

Defendants.

Case No. 2:14-cv-01207-RFB-PAL

ORDER

(Mot Strike – Dkt. #124)

14     Before the court is Defendants Quest Diagnostics Incorporated and John Hiatt, Ph.D's

15 Motion to Strike Expert Report and Exclude Testimony; and Declaration of D. Faye Caldwell

16 (Dkt. #124).   The court has considered the motion, the Joinder filed by Defendants Quest

17 Diagnostics and John Hiatt (Dkt. #126), Plaintiff's Memoranda in Opposition (Dkt. ##133, 134)

18 and Defendants' Replies (Dkt. ##138, 141).

19                                              **BACKGROUND**

20     **I.   The Amended Complaint.**

21     The Complaint (Dkt. #1) in this case was filed July 24, 2014.   An Amended Complaint

22 (Dkt. #79) was filed October 16, 2015.   The amended complaint asserts claims for: (1)

23 negligence; (2) defamation; (3) libel; (4) slander; (5) fraud; (6) negligent misrepresentation; (7)

24 intentional infliction of emotional distress; and (8) intentional interference with a contract.

25 Plaintiff Patricia Harding Morrison ("Morrison") filed suit individually and in her capacity as the

26 Executor/Administrator of the Estate of Tommy David Morrison, deceased.   The amended

27 complaint names Quest Diagnostics, a Nevada corporation, John Hiatt, an individual and resident

28 of the State of Nevada employed by Quest, Dr. Margaret Goodman, the Nevada State Athletic

1

1    Commission ("NSAC"), and Marc Ratner, an individual and resident of the State of Nevada

2    working for NSAC.  Complaint ¶¶2-5.

3        Plaintiff is the widow of Tommy "The Duke" David Morrison, a former two-time

4    heavyweight boxing champion of the world.  *Id.* ¶11.  The amended complaint alleges that on

5    February 10, 1996, hours before a scheduled fight between Tommy Morrison and Arthur

6    "Stormy" Weathers in Las Vegas, Nevada, Tommy was diagnosed and persuaded by the

7    Defendants that his blood was "harboring the HIV virus."  *Id.* ¶12.  Tommy Morrison was

8    advised that he was contagious and that his blood was infected with the HIV virus as a direct

9    result of a clinical laboratory report issued by Quest and Hiatt for the NSAC prior to the fight.

10   *Id.*  Tommy Morrison was orally advised of the diagnosis February 10, 1996.  *Id.* ¶13.  The

11   diagnosis caused the cancellation of the first fight of multiple fights scheduled to take place

12   under a multi-million dollar fight contract Tommy Morrison signed with Don King.  *Id.*  The

13   diagnosis ultimately led to an indefinite worldwide suspension of Tommy Morrison as a licensed

14   boxer in the WBO.  *Id.*

15       The false diagnosis of HIV led to a downward spiral of Tommy's life and eventually

16   what was likely his early death.  *Id.*  Tommy Morrison became universally criticized,

17   criminalized, ridiculed, and was banished from a career in the sport he loved and helped to make

18   popular worldwide.  *Id.*  Tommy Morrison died September 1, 2013, after suffering from septic

19   shock over 21 months resulting from a hospital acquired blood infection, after surgeons

20   accidentally left 12 feet of infected surgical gauze in Tommy Morrison's chest following a

21   surgery for an insect bite.  *Id.* ¶15.  Plaintiff claims that Tommy Morrison's death was

22   completely unrelated to any diagnosis of HIV virus or AIDS.  *Id.*  ¶16.  Blood draws before and

23   after Tommy Morrison's death established that he did not have the HIV/AIDS virus, and no viral

24   particles resembling HIV, or "budding retroviruses" were found.  *Id.* ¶¶17, 18.

25       After Tommy Morrison died, Plaintiff began her own inquiry into the facts and

26   circumstances surrounding Tommy Morrison's diagnosis in 1996.  *Id.* ¶19.  On December 21,

27   2013, Plaintiff received an email from the attending physician for the scheduled 1996 Las Vegas

28   fight.  *Id.* ¶20.  The email confirmed that the attending physician had never diagnosed Tommy

1   Morrison as having the HIV virus, or being infected with HIV.  *Id.*  The email caused Plaintiff to

2   launch an investigation into what really happened and why on February 10, 1996.  *Id.*

3       Since Plaintiff began investigating the truth behind what happened that night, she has

4   been met with silence, countless road blocks, refusals by various parties to answer simple

5   questions such as "who and with what diagnosed Tommy Morrison with the virus/HIV on

6   February 10, 1996?"  Defendants have filed motions for extension and for dismissal in an

7   attempt to silence the Plaintiff and halt her efforts to discover the truth, and to avoid giving

8   Plaintiff definitive answers to very simple questions.  *Id.* ¶21.

9   **II.  The Parties' Positions.**

10       **A.  Quest's Motion to Strike Expert Report.**

11      In the current motion, the Defendants seek to strike Morrison's March 10, 2016, initial

12  designation of expert witnesses which discloses Dr. Henry Soloway as an expert witness.  In her

13  initial disclosure of experts Morrison also identified "all persons, except consultants, whom have

14  in any way treated Tommy David Morrison . . ., reviewed [his] medical records, or undertaken

15  any diagnostic treatment or procedures."  The initial disclosure attached Dr. Soloway's opinion

16  in affidavit form.  Dr. Soloway's affidavit states that APL, now known as Quest Diagnostics, did

17  not collect Tommy Morrison's blood specimen that was tested on or about February 9, 1996.  Dr

18  Soloway also opines that because Tommy Morrison was never treated for HIV, someone must

19  have intentionally submitted a blood specimen from an HIV-infected individual to APL for

20  testing to cause the cancellation of the boxing match for which the testing was conducted.

21  Morrison also submitted a resume for Dr. Soloway dated December 20, 2015, which includes the

22  last revised date for his publications as of November 6, 2012.

23      After receiving the designation and affidavit, counsel for the Defendants contacted

24  Morrison to arrange to take Dr. Soloway's deposition.  Morrison directed counsel to contact Dr.

25  Soloway to arrange his deposition directly.  Counsel for Quest Diagnostics called Dr. Soloway

26  who informed counsel that: (1) he was not Morrison's retained expert witness; (2) he had

27  repeatedly informed Ms. Morrison that he was not her expert witness; (3) he was unwilling to be

28  her expert witness; (4) he was no longer accepting calls from Ms. Morrison; and (5) he would not

appear for deposition as Morrison's expert witness.  Counsel for Defendants discussed this with Ms. Morrison and asked that she make arrangements to schedule Dr. Soloway's deposition.  She responded that she would not do so, but that he remained her retained expert witness and she believed he had been threatened or intimidated into making statements to defense counsel.

Defense counsel also asked Morrison to withdraw, cure or amend her expert disclosures that merely identified unknown persons who have in any way treated Tommy Morrison, reviewed his medical records, or undertaken any diagnostic treatment procedures.  She refused, therefore necessitating this motion.  The Defendants argue that Morrison's designations are procedurally defective and fail to comply with the expert disclosure requirements of Rule 26(a)(2)(A).  Dr. Soloway's affidavit should be excluded as a matter of law because it does not comply with the expert witness disclosure requirements of the Federal Rules.  In addition, the resume is incomplete and no information is provided concerning the amount of compensation for his testimony.

Additionally, the expert designation does not identify the name and substance of testimony from the treating physicians she seeks to designate as experts, fails to identify the subject matter on which each witness is expected to testify and a summary of the facts and opinions to which the witness is expected to testify as required by Rule 26(a)(2)(C).

The motion makes additional arguments that Dr. Soloway's affidavit opinions are not reliable, fail to comply with the *Daubert* test and Rule 702.  Based on all of these deficiencies, the Defendants seeks an order excluding Dr. Soloway and the unidentified healthcare providers from testifying at trial.

**B.  State Defendants' Joinder (Dkt. #126).**

The State Defendants filed a joinder that adopted and incorporated the legal arguments and conclusions set forth in Quest's motion to strike.

**C.  Plaintiff's Oppositions (Dkt. #133/134).**

In her oppositions, Plaintiff states that she believes that Dr. Soloway may have been harassed, threatened, silenced, intimidated, or is "suffering from fear of the unknown."  She asks that the court take judicial notice of any further intimidation of other potential witnesses.  She

4

states that she had numerous texts and lengthy phone calls with Dr. Soloway discussing the 1996 Quest results, the result of post-mortem blood autopsy performed under the electron microscope, and had a delightful meeting with him in Las Vegas, Nevada at the end of September 2015.  Dr. Soloway's affidavit was provided at no cost, pro bono, to her.  Dr. Soloway's only concern was that his fees to attend the trial and deposition might be too costly for Plaintiff.  Dr. Soloway stopped all communications with Plaintiff after the affidavit of expert witness was submitted and filed with the court.  He is unquestionably an expert in the relevant field and this court should decide whether to compel the attendance of Dr. Henry Soloway at trial, and whether to recognize and admit the affidavit he prepared.  Plaintiff also argues that Dr. Soloway's affidavit meets the *Daubert* standard and Federal Rule of Evidence 702.  Dr. Soloway's affidavit establishes information the jury must be made aware of, specifically, that test kit manufacturer's package inserts contain a disclaimer that the test is not intended to be used as a screening test for HIV or as a diagnostic test to confirm the presence of HIV infection.  Plaintiff believes Dr. Soloway's written testimony is reliable and that is why he has been silenced.

### D.  Quest's Reply (Dkt. #138).

Defendants' reply argues that Morrison's oppositions do not address the procedural and substantive basis on which the Defendants move to exclude Dr. Soloway.  Rather, her opposition makes unsupported allegations that he has been coerced into withdrawing as her retained expert, and that his affidavit should be admitted because his testimony is "reliable" and "due to his sudden disappearance."  The reply reiterates arguments that Dr. Soloway's expert report and disclosures are defective and that her designation of all treating physicians is similarly defective. The reply also contends that Morrison's allegations of harassment of Dr. Soloway are baseless. Morrison herself directed counsel to contact Dr. Soloway directly to arrange for his deposition. This is inconsistent with her contention that Dr. Soloway was her retained expert.  Dr. Soloway's affidavit was signed on February 2, 2015, more than a year prior, and Plaintiff claims that her last communication with him was in Sepeptember 2015, before the first amended complaint was even filed.  Morrison does not provide any information about what she did when Dr. Soloway disavowed any relationship with her or describe efforts made to communicate with him to secure

1    his deposition on her behalf.  The reply also reiterates arguments that Dr. Soloway's opinions are

2    not reliable and will not assist the trier of fact.

3        **E.  The State Defendants' Reply and Joinder (Dkt. #141).**

4        The State Defendants filed a joinder incorporating and enjoining in Quest and Hiatt's

5    reply**.**

6                                    **DISCUSSION**

7        Plaintiff's March 10, 2016 initial designation of expert witnesses disclosed Dr. Henry

8    Soloway as her expert and provided his affidavit and CV.  The designation stated Dr. Soloway's

9    report was provided pro bono, and that he would "provide upon request the hourly/and or daily

10   fees for deposition and trial testimony."  Plaintiff's designation also "names all persons, except

11   consultants, whom have in any way treated Tommy Morrison…reviewed TOMMY'S medical

12   records, or undertaken any diagnostic or treatment procedures."  Defendants seek to strike and

13   exclude Dr. Soloway, and the unidentified medical providers because Plaintiff has not complied

14   with the expert report requirements of Rule 26.  Plaintiff's disclosure addresses two different

15   types of experts for which different provisions of Rule 26(a)(2) apply—treating providers and an

16   expert specially retained to provide testimony in this case.

17      **I.  Expert Report Requirments**

18       Rule 26 of the Fed. R. Civ. P. requires parties to disclose the identity of any person who

19   may be used as an expert witness.  Fed. R. Civ. P. 26(a)(2)(B).  For each disclosed expert, Rule

20   26(a)(2)(B) requires that an expert witness disclosure be accompanied by a written report

21   prepared and signed by the witness containing: (1) a complete statement of all opinions and the

22   basis and reasons therefor; (2) the data or other information considered by the witness in forming

23   the opinions; (3) any exhibits to be used as a summary of or support for the opinions; (4) the

24   qualifications of the witness, including a list of all publications authored by the witness within

25   the preceding ten years; (5) the compensation to be paid for the study and testimony; and (6) a

26   listing of any other cases in which the witness has testified as an expert at trial or by deposition

27   within the preceding four years.  Fed. R. Civ. P. 26(a)(2)(B).  An expert's report must be

28   "detailed and complete."  *Elgas*, 179 F.R.D. at 300 (quoting *Sierra Club v. Cedar Point Oil Co.,*

*Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)).  Expert reports are required in order to eliminate "unfair surprise to the opposing party and [to conserve] resources."  *Elgas*, 179 F.R.D. at 299 (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)).  In *Elgas,* the court struck the designation of an expert because he had not listed in his report the cases in which he had testified as an expert. *Id*. at 300.

### II.  Treating Physicians.

Fed. R. of Civ. P. 26(a)(2)(B) limits required expert witness disclosures to  witnesses "retained or specially employed to provide expert testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).  While a treating physician is often called as an expert witness at trial, he or she is not generally retained or specially employed for this purpose, but rather to treat a plaintiff for his or her medical complaints.  In 2010, Rule 26 was amended to create Rule 26(a)(2)(C) and resolve the tension that sometimes prompted courts to require reports under 26(a)(2)(B) from witnesses exempted from the expert report requirement.   The Advisory Committee's Note regarding this amendment states, in relevant part:

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions.   This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B).   Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.
>
> …
>
> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705.  Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.   Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C) .  The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

*See* Fed. R. Civ. P. 26(a)(2)(C), Advisory Committee's Note, 2010 Amendment, effective Dec. 1, 2010.  The amended rule strikes a balance between requiring an expert report from a witness like a treating physician, who was not specially retained to provide expert testimony and

1    requiring a defendant to search through hundreds of pages of medical records in an attempt to

2    guess at what the testimony of a treating physician might entail.

3          In a case of first impression in the circuit, *Goodman v. Staples the Officer Superstore,*

4    *LLC*, 644 F.3d 817 (9th Cir. 2011), the Ninth Circuit addressed, when, if ever, a treating

5    physician is required to prepare an expert report compliant with Rule 26(a)(2)(B).  In *Goodman*,

6    the Plaintiff tripped and fell in an Arizona office supply store and filed a complaint in state court

7    alleging the store negligently allowed an unreasonably dangerous condition to exist which

8    resulted in her fall and serious injuries.  The case was removed to federal court based on

9    complete diversity between the parties.  Under Arizona law, causation is an essential element of

10   a negligence claim.  The district judge prohibited Plaintiff's medical experts from testifying

11   about causation in plaintiff's case-in-chief because she did not comply with her Rule 26(a)(2)(B)

12   report disclosure obligations.  On appeal, the Ninth Circuit held that "when a treating physician

13   morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating

14   doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2)."  *Id*. at 819–

15   20.  However, because the law regarding "hybrid experts" was not settled, and because treating

16   physicians are usually exempt from the requirement of providing written report, the Ninth Circuit

17   exercised its discretion to apply this clarification prospectively.  *Id*.

18         In *Goodman*, the Ninth Circuit recognized that the general rule is that a treating physician

19   is a percipient witness of the treatment rendered rather than an expert retained or specially

20   employed to provide expert testimony.  For this reason, a treating physician is ordinarily not

21   subject to the written report requirements of Rule 26(a)(2)(B).  *Id*. at 824 (citing Fed. R. Civ. P.

22   26(a)(2) Advisory Committee Note (1993)).  However, the Ninth Circuit noted that district

23   courts in the circuit have limited treating physician testimony to opinions formed during the

24   course of treatment when the party seeking admission of the testimony disclosed no expert

25   report.  *Id*. at 825.  Joining the Sixth, Seventh and Eighth Circuits, the Ninth Circuit held "that a

26   treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the

27   extent that his opinions were formed during the course of treatment.  *Id*. at 826.  The *Goodman*

28   decision found that the Plaintiff had retained a number of her treating physicians to render expert

8

testimony beyond the scope of the treatment rendered, and that to form these opinions these doctors had reviewed information provided by Goodman's attorney that had not been reviewed during the course of their treatment. For these reasons, the Ninth Circuit agreed with the district court that these doctors fell outside the scope of the "treating physician" exception, and under Rule 26(a)(2)(B), written reports were required.

### III. Rule 37

Rule 37(c) authorizes sanctions for a party's failure to make disclosures or cooperate in discovery:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Rule 37(a)(4) explicitly provides that an evasive or incomplete disclosure, answer, or response to a discovery obligation "is to be treated as a failure to disclose, answer, or respond." Thus, Rule 37 gives "teeth" to Rule 26's mandatory disclosure requirements by forbidding the use at trial of any information that is not properly disclosed. *Ollier*, 768 F.3d at 861. Rule 37(c)(1) is a "self-executing, automatic" sanction designed to provide a strong inducement for disclosure. *Goodman v. Staples, The Office Superstore*, 644 F.3d 817, 827 (9th Cir. 2011).

The burden is on the party facing discovery sanctions under Rule 37(c)(1) to prove harmlessness. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) (applying Rule 37(c)(1) to a failure to disclose an expert report as required by Rule 26(a)(2)(B)). Exclusion of an expert's testimony for failure to comply with the requirements of Rule 26(a) is a sanction available to the district court even in the absence of a showing of bad faith or willfulness. *Yeti by Molly*, 259 F.3d at 1106. The Ninth Circuit reviews a district court's decision to sanction for a violation of the discovery rules for abuse of discretion. *Id.* (citation omitted).

### IV. Analysis and Decision.

Plaintiff's expert disclosure does not comply with her Rule 26(a) expert disclosure obligations. She does not identify, let alone provide a summary of the facts and opinions on

which any medical provider will provide testimony. Dr. Soloway's affidavit contains opinions and some discussion of the bases for his opinions.  It does not identify the data or other information he relied upon in forming his opinions except in the most general and unhelpful way. For example, he refers to 3 tests performed by APL (now Quest) on a blood sample between February 8 and 10, 1996, and missing data on "the requisition sheet".  He also refers to information he received from unidentified source(s) that Mr. Morrison received no medication for HIV, and had a subsequent test for HIV on an unidentified date, by an unidentified lab or other provider which "failed to detect the presence of HIV virus."  The affidavit does not provide any exhibits to be used in support of his opinions or testimony. The CV served on Defendants was dated December 20, 2013 with a last revised date of November 6, 2012.  It does not contain the compensation to be paid for his testimony, or a listing of cases in which Dr. Soloway has testified as an expert at trial or by deposition in the last four years.

Plaintiff's opposition does not address these deficiencies or request additional time to cure the deficiencies. Plaintiff states that Dr. Soloway has broken off communication with her. Defense counsel attempted to arrange for Dr. Soloway's deposition initially through Plaintiff and was told to contact him directly.  When defense counsel contacted Dr. Soloway he told her: that he was not Ms. Morrison's retained expert, had repeatedly told Ms. Morrison that he would not appear as her retained expert, would not provide expert testimony on her behalf, or appear at deposition as her expert witness, and was not taking Ms. Morrison's calls.  Caldwell Declaration Dkt # 124-1.  It is therefore clear that allowing Plaintiff additional time to cure the deficiencies of her expert disclosure obligations as to Dr. Soloway would be futile.

Ms. Morrison asks that the court deny the motion to strike and compel Dr. Soloway's attendance at trial.  The court has the authority under Rule 45(c) to compel a person to attend a trial, hearing or deposition "within 100 miles of where the person resides, is employed or regularly transacts business in person."  However, the court has no authority to compel a witness to serve as an involuntary expert witness for a party, or to provide uncompensated expert opinions.

For these reasons,

1    **IT IS ORDERED** Defendants' Motion to Strike Expert Report and Exclude Testimony

2    (Dkt #124) is **GRANTED.**

3    DATED this 23rd day of June, 2016.

4

5    _____

6    PEGGY A. LEEN
     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28