UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PATRICIAL HARDING MORRISON,<br><br>                                      Plaintiff,<br>v.<br>QUEST DIAGNOSTICS INC., et al.,<br><br>                                      Defendants. | Case No. 2:14-cv-01207-RFB-PAL<br><br>ORDER<br><br>(Mot Strike - #162) |

This matter is before the court on Defendants Quest Diagnostics Incorporated and John Hiatt, Ph.D.'s Motion to Strike Rebuttal Expert Report and Exclude Testimony; and Declaration of D. Faye Caldwell (Dkt. #162). The court has considered the Motion, Defendants Nevada State Athletic Commission, Marc Ratner, and Dr. Margaret Goodman's Joinder (Dkt. #169), Plaintiff's Response and Opposition (Dkt. #171), Plaintiff's Response and Opposition to the State Defendants' Joinder (Dkt. #177), the State Defendants' Reply (Dkt. #178), and Defendants Quest and Hiatt's Reply (Dkt. #179).

**BACKGROUND**

This motion was referred to me because it was called a motion to strike and exclude under the assumption that it involved failure to comply with the Plaintiff's discovery and disclosure obligations. However, a review of the motion reflects that the majority of the arguments center on claims that Plaintiff's rebuttal expert, Dr. Jonas Moses, Ph.D., is not qualified to provide expert testimony on the matters on which he provides opinions. Additionally, the motion claims that Dr. Moses' testimony is inadmissible because it is not reliable, irrelevant, and outside his field of expertise. The motion argues that Dr. Moses is not qualified to offer any expert testimony on HIV and HIV testing as a matter of law for reasons set forth at length in the motion which attaches a copy of his deposition testimony and expert report.

The motion asserts that Dr. Moses was unable to cite, with specificity, internet materials he reviewed to support his opinions. It also argues that Dr. Moses is not truly a rebuttal expert as defined by Rule 26(a)(2)(C)(ii) because he does not contradict Defendants' expert, Dr. Branson. Rather, he merely disagrees with Dr. Branson's opinion and presents new arguments and testimony on topics on which Morrison bears the burden of proof. For all of these reasons, Dr. Moses' testimony should be excluded at trial.

Plaintiff opposes the motion arguing that Dr. Moses has vast knowledge and experience in science, cell biology, cancer, assay test kits, studies and authorships that give him specialized knowledge that will assist the trier of fact. She argues his testimony is admissible under Federal Rule of Evidence 702. To the extent that Defendants' motion is based on objections on the factual foundation for Dr. Moses' opinions under *Daubert* or its progeny, Plaintiff argues that the factual bases of the opinions go to the credibility of the testimony, not its admissibility.

Plaintiff also explains that at the beginning of Dr. Moses' deposition, he testified that, since his name was published in association with this case months ago, he began to receive hundreds of phone calls, some of them threatening. Both of his cars were broken into, his house was rifled, and he lost control of his computer. He was locked out of his Gmail account and Google accounts. His wife was concerned that his life was in danger for giving testimony in this case, he obtained a security system for his house, and discussed sending his wife and children out of the country. Nevertheless, Dr. Moses is willing to testify and "does not wish to be succumbed to being silenced and excluded from this truth-seeking case and shall willingly be present to testify at the upcoming Trial." Plaintiff requests that the court deny the Defendants' motion and recognize that "Dr. Moses' testimony demonstrates exactly what Defendants claim it does not: and empirically proven an academically unassailable link, and a relevance to issue Defendants themselves claim are centrally important to this case."

**DISCUSSION**

Having reviewed and considered the matter, the court finds that the admissibility of Dr. Moses' testimony is a matter best reserved for the district judge to decide as a motion in limine after dispositive motions are decided, rather than in a pretrial motion to exclude. The court will

1 grant the motion to the limited extent that Plaintiff may not call Dr. Moses as an expert in her case-in-chief as she has designated him strictly as a rebuttal expert to rebut the testimony of Dr. Branson.

### A. Rebuttal Opinions

The purpose of rebuttal testimony is to "explain, repel, counteract or disprove evidence of an adverse party . . . " *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005) (internal quotations omitted). Or stated a bit differently, "[t]he proper function of rebuttal evidence is to contradict, impeach or diffuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Department*, 535 F.3d 621, 630 (7th Cir. 2008). Rebuttal evidence may be introduced to challenge the evidence or theory of an opponent, but may not be used to establish a case-in-chief. *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 759 (8th Cir. 2006).

A rebuttal expert witness may only testify after the opposing party's initial expert witness testifies. *Linder v. MeadowGold Dairies, Inc.,* 249 F.R.D. 625, 636 (D. Haw. 2008). The Eighth Circuit has recognized that "the fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in rebuttal." *United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir. 1980). However, rebuttal testimony is not an opportunity to cure oversights in a party's case-in-chief. *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004).

Applying this standard, Dr. Moses *may* have some testimony the district judge may regard as appropriate rebuttal. This is a decision which should be made after the pleadings have closed, summary judgement has been decided and the district judge determines whether, and if so, which claims will proceed to trial. The district judge will also be in a superior position to determine whether Dr. Moses has admissible rebuttal opinions after Dr. Branson testifies.

### B. Admissibility of Opinion Testimony

In *Hobbs v. Hartford Fire Ins. Co.,* 162 F.3d 576 at 586 (10th Cir. 1998), the Tenth Circuit succinctly noted there are two requirements that parties seeking to offer expert testimony must satisfy. First, the witness must be an expert. Second, the expert testimony must assist the trier of fact. Fed.R.Evid. 702 provides:

3

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.*

Rule 702 was amended in 2000 to respond to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 502 U.S. 579 (1993), and its progeny. *See* Fed.R.Evid. 702 Advisory Committee Note to 2000 Amendments. In *Daubert*, the Supreme Court held that the *Frye* (*Frye v. United States*, 293 Fed. 1013, 1014 (D.C. Circuit 1923)) test for admitting scientific expert testimony which required that a scientific technique be "generally accepted" as reliable in the scientific community, was superseded by the adoption of the Federal Rules of Evidence. *Daubert*, 509 U.S. at 587. The *Daubert* decision also made clear that the Federal Rules of Evidence impose a "gatekeeping" obligation on the trial courts to ensure that proffered evidence is relevant and reliable. *Id.* at 789. The Supreme Court provided a list of four non-exclusive factors which a district court *may* consider in the discharge of its gatekeeping duties: (1) whether the theory or technique can be tested; (2) whether it has been subject to peer review and publication; (3) the known or potential error rate of the theory or techniques; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Id.* at 592-94.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the trial court's gatekeeping function is not limited to "scientific" expert testimony, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. The *Kuhmo Tire* decision also held that the trial court "may consider one or more of the more specific factors that *Daubert* mentioned when doing so will determine that testimony's reliability." *Id.* The *Daubert* factors, however, were not intended to be exhaustive, or to apply in every case. *Id.* at 158. The trial judge must have considerable leeway in deciding how to determine whether expert testimony in a particular case is reliable, "[t]hat is to say, a trial court should consider the

4

specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152. A district court's discretionary rulings on whether to receive or exclude evidence, including expert testimony, will be reversed only if "manifestly erroneous." *General Elec. Co. v. Joiner*, 522 U.S. 136, 142. The decision whether or not to admit expert testimony is left to the discretion of the district court. *See United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000) (district court's decision to admit expert testimony reviewed for abuse of discretion). The district court not only has broad discretion to decide *whether* to admit expert testimony, but the court also has broad discretion to determine *how* to test an expert's reliability. *See Kuhmo Tire,* 526 U.S. at 152 (stating "[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable").

The objective of *Daubert's* gatekeeping requirement is "to ensure the reliability and relevance of expert testimony." *Id.* at 152. The trial judge must determine at the outset, pursuant to Rule 104(a) whether the expert will testify to scientific knowledge that will assist the trier of fact, and "this entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. A district court has an initial gatekeeping duty to "ensure that an expert's testimony `is not only relevant, but reliable'" (*quoting Daubert*, 509 U.S. at 597). The test of reliability is flexible, and "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Alatorre*, 222 F.3d at 1101 (*quoting Kumho Tire,* 526 U.S. at 141-42). Whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter within the broad discretion of the trial court. *Kuhmo Tire,* 526 U.S. at 153.

The Ninth Circuit has held that "in considering the admissibility of testimony based on some other specialized knowledge, Rule 702 generally is construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.), *cert. denied*, 530 U.S. 1268 (2000) (internal citation omitted). In *Hankey*, the Ninth Circuit held that the admissibility of expert opinion testimony

generally turns on the following preliminary question of law determinations by the trial judge under Fed. R. Evid. 104(a):

> (1) Whether the opinion is based on scientific, technical, or other specialized knowledge; (2) whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) whether the expert has appropriate qualifications, *i.e.* some special knowledge, skill, experience, training or education on the subject matter; (4) whether the testimony is relevant and reliable; (5) whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury); (6) whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*Id.* at 1168. "One very significant fact" is whether the expert has developed his or her opinions exclusively for purposes of testifying. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir.), *cert denied*, 516 U.S. 869 (1995) ("*Daubert* II"). This is because "a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Id*.

In *Hankey*, the court found a police officer was qualified to testify as an expert on gangs' "code of silence" based on his years of experience as an undercover officer working with gangs. *Id*. at 1169. The court stated, "[t]he *Daubert* factors (peer review, publication, potential error rate, etc.,) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id*. Relevant reliability concerns may focus upon personal knowledge or experience rather than upon scientific foundations. *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998) (upholding the admission of expert testimony from law enforcement officer regarding jargon of narcotics trade on basis of expert s training, experience, and personal knowledge).

To admit expert testimony under Rule 702, the trial court must determine first, that it will assist the trier of fact, *i.e.*, that it is relevant. *Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d, 851, 853 (9th Cir. 1997). Second, the evidence must be reliable. *Id.* The test of reliability and relevance is flexible, and "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Alatorre,* 222 F.3d at 1102 (*quoting Kumho Tire*, 526 U.S. at 141-42). However, the court's "gatekeeping inquiry must be tied to particular facts" of a case. *Id*. at 150. "Rule 702 demands that expert testimony relate to scientific, technical, or other

specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." As the Ninth Circuit has observed, an opinion based on unsubstantiated and undocumented information "is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998).

In order to be admissible, an "expert opinion must be supported by an adequate basis in relevant facts or data." *Stratosphere*, 66 F. Supp. 2d at 1188 (*citing* Michael H. Graham, 2 *Handbook of Federal Evidence* § 702.1, p.29 (4th ed. 1996); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (upholding district court's exclusion of conclusions in expert report with only "scant basis" in the record)). Similarly, a California district court held that proffered expert testimony concerning a patient's medical condition fourteen years earlier, based only upon the patient s self-report to the experts, was "unsupported speculation." *Goomar v. Centennial Life Ins. Co.*, 855 F. Supp. 319, 326 (S.D. Cal. 1994).

Other courts have generally held that an expert's opinion "should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Blake v. Bell s Trucking, Inc.*, 168 F. Supp. 2d 529, 532 (D. Md. 2001). *See also Coleman v. Dydula*, 139 F.Supp.2d 388, 390 (W.D.N.Y. 2001) (finding expert testimony reliable where it has "a traceable, analytical basis in objective fact"); *Rogers v. Ford Motor Co.*, 952 F.Supp. 606, 615 (N.D. Ind. 1997) (holding that in deciding whether to admit expert testimony, district court must rule out subjective belief or unsupported speculation); *Collier v. Varco-Pruden Bldgs.*, 911 F. Supp. 189, 192 (D.S.C. 1995) (holding expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record); *Guillery v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (holding court properly excluded expert testimony not based on facts in the record, but based on altered facts and speculation designed to bolster one party's position); *Damon v. Sun Co.*, 87 F.3d 1467, 1474 (1st Cir. 1996) (holding expert should

not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation); *Fedorczyk v. Carribean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) (if expert opinion is based on speculation or conjecture, it may be stricken); *Casas Office Mach., Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 681 (1st Cir. 1994) (holding district court may exclude expert testimony where it finds that the testimony has no foundation or rests on obviously incorrect assumptions or speculative evidence); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) (holding relevant testimony from expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation); *but see Primrose v. Philadelphia Dressed Beef Co.*, 252 F. Supp. 595, 597 (D. Pa. 1966) (opinion based on stated assumed facts is admissible); *Sphere Drake Ins., PLC v. Trisko*, 226 F.3d 951 (8th Cir. 2000) (attacks on foundation of expert s opinion go to weight rather than admissibility).

The trial court "is not required to hold a Rule 104(a) hearing" before considering proffered expert testimony "but rather must merely make a determination as to the proposed expert's qualifications." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994). Similarly, although it may be appropriate in some cases, the trial court is not obligated in fulfilling its gatekeeping responsibilities to hold a separate hearing before trial and may defer its evidentiary determinations until trial. *Alatorre*, 223 F.3d at 1099. There, the Ninth Circuit stated that there is nothing prejudicial to a party in reserving a ruling on the admission of opinions and conclusions of an expert until offered at trial when all of the necessary foundation must be proved and the adequacy of the showing made will be determined before questions asking for opinions and conclusions will be permitted. *Id*. at 1103 (*citing United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999).

The district judge has not yet decided a pending motion to dismiss. Therefore, it is not clear what, if any, claims may go to a jury. Defendants have had the opportunity to depose Dr. Moses and know what his opinions are. The decision to admit or exclude his opinions in rebuttal should be reserved to the district judge.

For the reasons explained,

**IT IS ORDERED** that:

1. Defendants' Motion to Strike Rebuttal Expert Report and Exclude Testimony (Dkt. #162) is **GRANTED** to the limited extent Dr. Moses may not testify in Plaintiff's case-in-chief as Plaintiff has designated him as a rebuttal expert to the opinions expressed by Dr. Branson. Any testimony admitted at trial shall only be to rebut Dr. Branson's testimony.

2. The motion is **DENIED in all other respects without prejudice** to refiling it as a motion in limine prior to trial.

3. The motion in limine may be filed **no earlier than** after decision of pending dispositive motions, and **no later than** thirty days prior to trial as required by LR 16-3(a).

DATED this 22nd day of June, 2016.

                                                PEGGY A. LEEN
                                                UNITED STATES MAGISTRATE JUDGE