UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRICIA HARDING MORRISON,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INC.., *et al*.<br><br>Defendants. | Case No. 2:14-cv-01207-RFB-PAL<br><br>**OPINION & ORDER**<br><br>Defendants' Motions for Summary Judgment (Dkt. No.'s 174 and 175) |

## I.   INTRODUCTION

Before the Court are Defendants Margaret Goodman, Nevada State Athletic Commission (NSAC), and Marc Ratner's Motion for Summary Judgment, (Dkt. No. 174), and Defendants John Hiatt and Quest Diagnostics Incorporated's Motion for Summary Judgment, (Dkt. No. 175). For the reasons stated below, the Court GRANTS summary judgment as to all of Plaintiffs' claims in Defendants' favor.

## II.   BACKGROUND
### A.   Procedural History

In July 2014, Plaintiff, the surviving spouse of Tommy Morrison, filed her initial Complaint against Defendants. On October 16, 2015, Plaintiff filed an Amended Complaint as a survival action, in her capacity as the Executor of Tommy Morrison's estate, bringing claims for Negligence, Defamation, Slander, Libel, Fraud, Negligent Misrepresentation, Intentional Infliction of Emotional Distress, and Intentional Interference with a Contract, against all Defendants.

Defendants filed Motions to Dismiss the Amended Complaint in October and November of 2015. (Dkt. Nos. 82, 84).

Defendants filed Motions for Summary Judgment on June 8, 2016. (Dkt. Nos. 174, 175). On September 8, 2016, the Court held a hearing to address all pending motions in the case, including the fully briefed Motions to Dismiss and Motions for Summary Judgment. (Dkt. No. 261). On September 26, 2016, the Court denied the Motions to Dismiss without prejudice, as the pending Motions for Summary Judgment encompass the same arguments. (Dkt. No. 263).

### B.  Factual Background

The Court incorporates its discussion of the undisputed facts from its hearing on September 8, 2016. In order to participate in a professional bout of unarmed combat (boxing, MMA, or kickboxing) in the State of Nevada, a person must obtain a license from the NSAC. N.R.S. 467.070(1), N.R.S. 467.100. In order to obtain that license, applicants must comply with the requirements found in the Nevada Revised Statutes and Nevada Administrative Code, which includes proof that the applicant meets the medical requirements to obtain a license. A license is valid for the calendar year in which it is issued, and a person must reapply for a license each year in order to take part in professional unarmed combat in Nevada.

Tommy Morrison, former world heavyweight boxing champion, was scheduled to participate in a professional boxing match on February 10, 1996, in Las Vegas, Nevada. Mr. Morrison had previously filed applications, and been granted combatant's licenses, in 1989, 1990, 1991, 1992, and 1993. On February 7, 1996, Morrison filled out an application for an unarmed combatant's license, but failed to provide all of the medical requirements to obtain a license. That day, Mr. Morrison went to a private physician in Las Vegas, Dr. Voy, to complete his medical examination. Mr. Morrison refused to provide a blood sample for the HIV test. He was told that he could not fight without completing this requirement, so he provided a blood sample, which was sent to APL (Quest Laboratories' predecessor in interest) for analysis.

Quest reported the results of the test as positive for HIV. Those results met the clinical laboratory standard of care for HIV-1 antibody testing in 1996, and no evidence has been presented

to controvert the accuracy of the results. Quest purchased its HIV-1 antibody confirmatory test kits, which were approved for commercial use by the U.S. Food and Drug Administration ("FDA"), from the test kit manufacturers, and used the kits in accordance with the manufacturers' instructions. Quest used the HIV-1 antibody testing algorithm recommended by the CDC to test for HIV.

Tommy Morrison signed a written consent form as part of his application for an NSAC license, allowing the NSAC to receive his HIV test result. On February 10, 1996 and February 12, 1996, Quest reported Tommy Morrison's test result to the NSAC and to the authorized physician ordering the test. Marc Ratner, executive director of the NSAC, met privately with Tony Holden, Tommy Morrison's advisor and promoter, and Tommy Morrison's attorney, Stuart Campbell, and informed them of the test result and the cancellation of the fight.

Tommy Morrison immediately thereafter submitted to several additional HIV tests to ensure that Quest's result was accurate. All of the testing, including testing by the Center for Disease Control (CDC), came back positive for HIV. Upon receipt of the subsequent positive HIV-I antibody test results, on February 15, 1996, Tommy Morrison held a press conference in which he announced that he had tested positive for HIV. He gave interviews with Larry King, Maria Shriver, and Maury Povich about his HIV status.

From 1996 until Tommy Morrison's death in 2013, he was repeatedly tested, diagnosed, and treated for HIV and/or AIDS by various physicians. In 2007, Tommy Morrison attempted to resume his boxing career, and publicly questioned the accuracy of Quest Diagnostic's February 1996 laboratory test result. In response to Mr. Morrison's public statements in 2007, and his efforts to overturn NSAC's 1996 licensing decision, the NSAC contacted Quest regarding the laboratory's procedures for HIV testing. In 2007, Defendant Dr. John Hiatt was the primary laboratory contact at Quest for the NSAC. He explained to the NSAC that the laboratory's HIV testing procedures in 1996 met the standard of care in 1996, and were reliable. Dr. Hiatt was not personally involved in the February 1996 HIV-1 antibody testing of Mr. Morrison's blood specimen, nor the reporting of the results. He has never made any statements to the media or press regarding Mr. Morrison, his HIV status, or his HIV test results. Dr. Margaret Goodman was the head of the NSAC's Medical

1  Advisory Board from September 2001 to July 2007. Dr. Goodman requested the information from
2  Dr. John Hiatt in 2007. Dr. Goodman was not personally involved in the February 1996 testing of
3  Mr. Morrison's blood specimen, or NSAC's decisions in 1996 regarding Mr. Morrison's licensing.

4       In 2009, Tommy Morrison met Patricia Harding. In 2009, according to Patricia Harding
5  Morrison's own deposition, Mr. Morrison told her that he considered the 1996 Quest test result to
6  be a false positive. In May 2011, Tommy Morrison married Patricia Harding. On September 1,
7  2013, Tommy Morrison died. His discharge summary at the time of his death included a diagnosis
8  of HIV. Patricia Morrison alleges that, after Tommy Morrison's death, electron microscopy
9  revealed that he never had HIV. However, she has provided no evidence to support this allegation,
10 and the uncontroverted evidence demonstrates that Mr. Morrison was repeatedly diagnosed with,
11 and received treatment for, HIV, from 1996 through 2013. According to Ms. Morrison's
12 deposition, to the best of her understanding based on what she was told by Mr. Morrison in 2009,
13 he had begun questioning whether he actually had HIV beginning in 1996. Ms. Morrison has no
14 first-hand knowledge of events that occurred in Mr. Morrison's life prior to 2009.

### C. Pending Non-Dispositive Motions

As a preliminary matter, the Court addresses several pending non-dispositive motions in this case.

On March 30, 2016, Plaintiff filed a "Request for Judicial Notice in Support of Summary Adjudication/Trial Brief and Plaintiff's Second Amended Complaint" (Dkt. No. 125). In this request, Morrison asks the Court to take judicial notice of thirty-two assertions, and attaches hundreds of pages of exhibits in support of her request. Morrison relies on Fed. R. Evid. 201(b) to support her motion. This rule allows a court to take judicial notice of a fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Since the effect of taking judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and arguments to attack contrary evidence, district court typically only do so when the "matter is beyond controversy." See Rivera v. Philip Morris, Inc.,

1  395 F.3d 1142, 1151 (9th Cir. 2005). However, Morrison asks the Court to take judicial notice of
2  asserted facts which are not "beyond controversy", and are couched in arguments related to her
3  case. Furthermore, Morrison did not move to file a Second Amended Complaint, and the Court
4  does not find any good cause for recognizing, sua sponte, the Second Amended Complaint she
5  filed along with her "Request for Judicial Notice". Therefore, the Court denies Morrison's Request
6  for Judicial Notice and does not take her Second Amended Complaint under submission (Dkt. No.
7  125).

8  Defendants have filed several Motions to Strike as to various filings by Ms. Morrison.
9  Defendant Hiatt filed a Motion to Strike (Dkt. No. 205) Plaintiff's "Separate Statement of Disputed
10 Facts and Conclusions of Law in Support of Plaintiff's Opposition to Defendant John Hiatt's
11 Motion for Summary Judgment" (Dkt. No. 191). Defendants NSAC, Goodman, and Ratner, filed
12 Motions to Strike (Dkt. Nos. 212, 217, 218, 222, 224, 225) Plaintiff's "Separate Statements of
13 Disputed Facts and Conclusions of Law" (Dkt. No. 193), and Plaintiff's "Separate Disputed Facts"
14 (Dkt. Nos. 202, 203). Plaintiff filed her separate statements in addition to her Responses to
15 Defendants' Motions for Summary Judgment. The Court's Local Rules do not allow lengthy
16 separate statements in support of pleadings regarding motions for summary judgment. D. Nev.
17 L.R. 56-1. Furthermore, the content of Ms. Morrison's separate statements do not create any
18 disputes as to issues of material fact addressed by Defendants' Motions for Summary Judgment.
19 Therefore, the Court grants Defendants Motions to Strike (Dkt. Nos. 205, 212, 217, 218, 222, 224,
20 225), and does not take Plaintiff's separate statements (Dkt. Nos. 191, 193, 202, 203) under
21 submission. In addition, the Court grants Defendants' Motion to Strike (Dkt. No. 229) Plaintiff's
22 Exhibit 1 filed in support of her Response to Defendants' Motion to Strike her separate statements.
23 This exhibit is an affidavit from Dr. Antonio Oslo, and constitutes supplemental evidence that
24 Plaintiff was not permitted to file without leave of court. D. Nev. LR 7-2(g). The Court does not
25 find good cause for the filing of Dr. Oslo's affidavit, and does not take exhibit 219-1 under
26 submission.
27 Defendants filed a Motion to Strike (Dkt. No. 216) Plaintiff's Exhibit List (Dkt. No. 200).
28 This series of filings consists of a declaration by Plaintiff arguing her theory of her case, a list of

1  objections to Defendants' exhibit list, and a series of documents that contain arguments and legal
2  conclusions by Plaintiff. All of Plaintiff's purported exhibits consist of uncertified copies of
3  testimony, unsupported legal arguments, or conclusory, self-serving affidavits. Defendants argue
4  that because of Plaintiff's non-compliance with local rules regarding filing, these documents
5  should not be taken under consideration. Again, the Court's Local Rules do not allow lengthy
6  separate statements in support of pleadings regarding motions for summary judgment. D. Nev.
7  L.R. 56-1. Furthermore, the content of Ms. Morrison's separate statements do not create any
8  disputes as to issues of material fact addressed by Defendants' Motions for Summary Judgment.
9  See Nilsson v. City of Mesa, 503 F.3d 947, 952 (9th Cir. 2010) ("A conclusory, self-serving
10 affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine
11 issue of material fact.") The Court grant Defendants' Motion to Strike (Dkt. No. 216), and does
12 not take Plaintiff's Exhibit List (Dkt. No. 200) under submission.

13 The Court denies Defendants' Motion to Strike (Dkt. No. 220) as to Plaintiff's declaration
14 in support of her Response to Motion for Summary Judgment (Dkt. No. 194). The Court construes
15 this declaration as part of Plaintiff's arguments in response to Defendants' Motion for Summary
16 Judgment, since it was filed with her Response. Although, pursuant to Nilsson, 503 F.3d at 952,
17 the Court does not find the self-serving affidavit to create a genuine issue of material fact, the
18 Court takes it under submission.

19

20 **III.    LEGAL STANDARD**

21 Summary judgment is appropriate when the pleadings, depositions, answers to
22 interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
23 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
24 Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering
25 the propriety of summary judgment, the court views all facts and draws all inferences in the light
26 most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960
27 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than
28 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## IV. ANALYSIS
### A. Statute of Limitations

Defendants argue that all of Ms. Morrison's claims are time-barred by the relevant statutes of limitations, because all of Morrison's claims arise from actions and conduct relating to the February 1996 Quest laboratory test and denial of a license by NSAC. Ms. Morrison's amended complaint situates each of her claims as arising from actions committed by defendants towards Mr. Morrison "on or about February 10, 1996, and on many dates thereafter". Her claims for negligence arise from allegations that the 1996 HIV test was improperly conducted by Quest, and that NSAC and Ratner were negligent in relying on that result to make the decision not to license Morrison to fight. Her claims on Mr. Morrison's behalf for defamation, libel, and slander, all stem from alleged public statements made by NSAC and Quest regarding Mr. Morrison's HIV status in 1996 and onwards. Plaintiff's fraud and negligent misrepresentation claims relate to alleged statements by Defendants, in 1996, that Mr. Morrison was diagnosed with HIV. Her intentional infliction of emotional distress claims stem from what she alleges to be "the false and fraudulent 'diagnosis' of his blood on February 10, 1996." Finally, her intentional interference with contractual relations claim relates to the cancellation of Mr. Morrison's contract to fight in February 1996. Plaintiff's lawsuit was filed on July 24, 2014.

Under Nevada law, a two year statute of limitations applies to claims for personal injuries or death, including claims for negligence. N.R.S. § 11.190(4)(e). A two year statute of limitations also applies to claims for defamation, libel, intentional infliction of emotional distress, and slander. N.R.S. § 11.190(4)(c), 4(e). A three year statute of limitations applies to claims for fraud, misrepresentation, and intentional interference with contractual relations. N.R.S. § 11.190(3)(d), (3)(c). Each of Ms. Morrison's claims on her husband's behalf appear to have accrued in 1996, based on the evidentiary record before the Court.

The statute of limitations begins to run "when the wrong occurs and a party sustains injuries for which relief could be sought." Orr v. Bank of America, 285 F.3d 764, 780 (9th Cir. 2002) (quoting Peterson v. Bruen, 792 P.2d 18, 20 (Nev. 1990)). When a person is unaware of his injury or cause of injury at the time of its occurrence, the statute of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action. See Bruen, 792 P.2d at 20. Although generally the time of discovery of a cause of action is a question of fact, where the undisputed evidence proved the plaintiff knew or should have known of the conduct, the time of discovery can be decided as a matter of law. Nevada Power Co. v. Monsanto Co., 955 F.2d 1304 (9th Cir. 1992). The undisputed facts and evidentiary record in this case show that Tommy Morrison was aware of NSAC's requirements that his blood be tested as a condition for his eligibility to fight, and that he signed a consent form allowing NSAC access to his HIV test results in 1996.  It is undisputed that he was informed that he could not obtain a license and fight in 1996 due to his positive HIV test result in that year. The evidence also shows that he publicly questioned the veracity of his HIV test results many times, beginning in 1996, and that he petitioned NSAC to overturn its licensing decision in 2007. Therefore, the record demonstrates undisputedly that Morrison was aware in 1996 of the facts and circumstances that serve as a basis for the claims in this case.  Indeed, even if he arguable was not aware then, he would have been aware in 2007 when he sought to revive his professional boxing career.

Ms. Morrison argues that Tommy Morrison could not have discovered his claims prior to his death, and that therefore the limitations period should be tolled. She alleges that Mr. Morrison's blood, when tested subsequent to his death, was clear of the HIV virus, and that this post-mortem test is what has given rise to her claims. Ms. Morrison has provided no evidence of this subsequent blood test, aside from her bare allegations. The evidentiary record in this case is replete with multiple affidavits from witnesses and from Mr. Morrison's own treating doctors that he was HIV positive and that he knew himself to be diagnosed as HIV positive. Furthermore, according to Ms. Morrison's own deposition, Tommy Morrison began questioning the accuracy of his diagnosis in 1996. In 2007, he tried to overturn NSAC's 1996 licensing decision, and publicly questioned its veracity, in response to which NSAC contacted Quest to confirm that its testing of Mr. Morrison's

1 blood sample in 1996 met the standard of care for HIV screening in 1996. Therefore, on the record
2 before the Court, Mr. Morrison was on notice of all of his claims in 1996, or at the very latest, in
3 2007.
4      Plaintiff also points to communication from Dr. Voy, the doctor who initially examined
5 Mr. Morrison in advance of his NSAC license application in 1996. Dr. Voy did not test a blood
6 sample of Mr. Morrison's, and only completed a physical examination of Mr. Morrison. Plaintiff
7 argues that the statute of limitations should be tolled to when Mr. Morrison received
8 communication from Dr. Voy that Voy had not diagnosed Mr. Morrison with AIDS in 1996. In
9 July 15, 2011, Dr. Voy sent an email to Mr. Morrison stating, "You are correct; I did not diagnose
10 you as having AIDS. I did your required licensing exam and found you physically qualified and
11 fit to box at the time." The Court does not find Dr. Voy's email to be sufficient cause to toll the
12 statute of limitations, when the evidence shows multiple occasions, beginning in 1996, when Mr.
13 Morrison expressed publicly his disagreement the reliability of his original diagnosis, and that he
14 wanted NSAC to overturn its licensing decision from 1996. Furthermore, even were the statute of
15 limitations to toll to the date of Dr. Voy's email on July 15, 2011, Plaintiff's lawsuit, brought on
16 July 24, 2014, still falls outside of the two and three year statutes of limitations that apply to her
17 claims.
18      Therefore, all of Plaintiff's claims are time-barred by the applicable statutes of limitations,
19 and must be dismissed with prejudice by this Court. In the alternative, the Court also finds that, on
20 the undisputed facts, all of Plaintiff's claims fail on the merits.
21
22      **B.  Claims Against Dr. John Hiatt and Dr. Margaret Goodman**
23      All of Plaintiff's claims against Defendants are rooted in the events of February 1996, when
24 Mr. Morrison was denied an unarmed combatant's license, and when he first made public
25 statements regarding his HIV diagnosis. Aside from general allegations that all Defendants
26 contributed to a 20 year "downward spiral" in Mr. Morrison's life, Plaintiff has failed to allege
27 any specific facts implicating Dr. Hiatt in any of her claims. In her Response to Dr. Hiatt and
28 Quest's Motion for Summary Judgment (Dkt. Nos. 191, 175), Plaintiff argues that because Hiatt

is an employee of Quest, he is equally liable for claims arising from the February 1996 testing of Mr. Morrison's blood. Dr. Hiatt's only involvement in the underlying facts of this litigation was to report to Dr. Margaret Goodman, in 2007, the reports Quest had on file regarding the 1996 testing of Mr. Morrison's blood. This was in response to a request from Dr. Goodman. Dr. Goodman, similarly, was not involved in the events of 1996, and was merely the head of NSAC's medical advisory board from 2001-2007. In 2007, when Mr. Morrison petitioned to have NSAC's 1996 licensing decision overturned, Dr. Goodman was responsible for contacting Dr. Hiatt to ascertain whether Quest's 1996 testing met the appropriate standard of care.

Therefore, Dr. Goodman and Dr. Hiatt cannot be held liable under any of the causes of action that Plaintiff raises, because Plaintiff has failed to raise any specific facts implicating them in the events underlying each of her claims. All claims against Dr. Goodman and Dr. Hiatt must be dismissed with prejudice.

### C. Count 1: Negligence

In Nevada, "to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009). The existence of a duty is "a question of law to be determined solely by the courts." Turner v. Mandalay Sports Entertainment, LLC, 180 P.3d 1172, 1177 (Nev. 2008). Breach and proximate cause, however, are generally questions of fact for the jury to decide. Foster v. Costco Wholesale Corp., 291 P.3d 150, 153 (Nev. 2012); Lee v. GNLV Corp., 22 P.3d 209, 212 (Nev. 2001). While the tort of negligence can be committed by parties to a contract, the alleged breach must be of a duty imposed by law independent of any contractual duty. Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987).

As to NSAC, Ratner, and Goodman, ("the State Defendants"), Plaintiff has failed to show any affirmative duty imposed by law that they owed to Mr. Morrison and breached. There is no evidence of any breach of a duty of reasonable care, and aside from that general duty, NSAC and Mr. Morrison were parties to a contractual agreement that was clear about its requirements in order

for Mr. Morrison to obtain a license to fight. NSAC reasonably relied on the HIV test results that Mr. Morrison provided to them, from Quest, through his signing of a consent form allowing them to access his medical results. As to Quest, its testing of Mr. Morrison's blood sample in 1996 met the clinical laboratory standard of care for HIV-1 antibody testing in 1996, and no evidence has been presented to controvert the accuracy of the results. Quest purchased its HIV-1 antibody confirmatory test kits, which were approved for commercial use by the U.S. Food and Drug Administration ("FDA"), from the test kit manufacturers, and used the kits in accordance with the manufacturers' instructions. Quest used the HIV-1 antibody testing algorithm recommended by the CDC to test for HIV. To the extent that Plaintiff is challenging Quest's methodology for testing Mr. Morrison's blood, Quest Diagnostics complied with the standard of care for clinical laboratory HIV testing in 1996, as the undisputed evidence demonstrates.

Therefore, the undisputed facts do not show any legally imposed duty of care that any of the Defendants have breached with respect to Mr. Morrison, and therefore, Defendants Motions for Summary Judgment are granted as to Ms. Morrison's negligence claim.

### D. Counts 2-4: Defamation, Libel, and Slander

The Court addresses Plaintiff's defamation, libel, and slander allegations together, because libel (defamation in writing) and slander (spoken defamatory statements) must all satisfy the elements of a defamation cause of action, and Plaintiff has not raised facts specific to libel or slander claims. Mr. Morrison was a former world heavyweight champion, and was frequently interviewed on television. He was therefore a public figure, and in order for Ms. Morrison to adequately raise claims of defamation on his behalf, she had the burden of proving the following elements: (1) a false and defamatory statement by each Defendant concerning Mr. Morrison; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; (4) actual or presumed damages; and "actual malice – that is, [a statement made] with the knowledge that the statement was false or with reckless disregard of its truth." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); *see also* Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 90 (Nev. 2002).

Plaintiff's defamation claims fail for several reasons. First, aside from broad allegations that Defendants have defamed Mr. Morrison continually since 1996, Plaintiff has not clearly proven which specific alleged defamatory statements she seeks to address in this lawsuit. She has submitted evidence of media articles published about Mr. Morrison's HIV status since 1996, but these are merely media reports flowing from publicly available information, including information Mr. Morrison provided to journalists – they are not direct interviews with the defendants.

Furthermore, truth is an absolute defense to allegations of defamation, and Defendants have proven this defense conclusively. See Pegasus, 57 P.3d 82. The undisputed evidence in this case shows that many tests over two decades of Mr. Morrison's life, including the 1996 test, revealed the presence of HIV in his blood. Plaintiff has raised no evidence to prove that Quest's reporting of a positive HIV test result to NSAC in 1996, nor NSAC's subsequent reporting to Mr. Morrison's promoter and attorney that Mr. Morrison could not be cleared for a fighting license due to medical reasons, were false.

Therefore, Defendants' Motions for Summary Judgment are granted as to Ms. Morrison's defamation, libel, and slander claims.

### E. Count 5: Fraud

Under Nevada law, a claim for fraud must be comprised of the following elements: (1) a false representation made by the defendants; (2) defendant's knowledge or belief that the representation is false, or defendant's knowledge of an insufficient basis for making the representation; (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage resulting from plaintiff's reliance. See Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386 (Nev. 1998). Plaintiff has provided no evidence of a false representation made by any of the Defendants. Pursuant to the analysis of the undisputed facts, supra, Quest's reporting of the 1996 test results to NSAC, and NSAC's denial of a fighting license based on that report, do not constitute false representations. Defendants reasonably relied on test results that were performed with the standard of reasonable care required, and Mr. Morrison was aware, and had signed a consent form acknowledging, that his license to fight was contingent on a medical clearance.

Therefore, Defendants' Motions for Summary Judgment are granted as to Plaintiff's fraud claim.

### F.  Count 6: Negligent Misrepresentation

Under Nevada law, in order to prove a claim of negligent misrepresentation, Plaintiff must prove that Defendants "in the course of [their] business, profession or employment, or in any other action in which [they] have a pecuniary interest, supplie[d] false information for the guidance of others in their business transactions" and caused pecuniary loss by Plaintiff's justifiable reliance upon the information, if Defendants "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." Barmettler, 956 P.2d 1387. Pursuant to the Court's analysis in Sections D and E, supra, Plaintiff has presented no evidence of false information supplied by any of the Defendants in this case.

Therefore, Defendants' Motions for Summary Judgment are granted as to Plaintiff's negligent misrepresentation claim.

### G.  Count 7: Intentional Infliction of Emotional Distress

Under Nevada law, in order to prove a claim of Intentional Infliction of Emotional Distress (IIED), Plaintiff must prove that Defendants engaged in (1) extreme and outrageous conduct; (2) with the intention of, or reckless disregard for, causing emotional distress; (3) which actually or proximately caused; (4) severe or extreme emotional distress. See Posadas v. City of Reno, 851 P.2d 438, 444 (Nev. 1993). "Extreme and outrageous conduct," as an element of IIED, is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. See Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998). Plaintiff has neither alleged, nor provided evidence of, any "extreme and outrageous" conduct on the part of any of the Defendants.  As noted above, the Court finds that, within the context of the claims in this lawsuit,  the Defendants acted reasonably based upon the information they received and the tests that were performed.

Therefore, Defendants' Motions for Summary Judgment are granted with respect to Plaintiff's IIED claim.

### H. Count 8: Intentional Interference with a Contract

Under Nevada law, to prevail on a claim of intentional interference with a contract, Plaintiff must establish: (1) a valid and existing contract); (2) Defendants' knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003). Morrison alleges that Quest intentionally interfered with Mr. Morrison's contract to box in the match scheduled for February 10, 1996 by conducting the blood sample test for HIV antibodies, and reporting those results to NSAC, and that NSAC interfered with the contract by rejecting Mr. Morrison's application for a license to fight. Ms. Morrison has failed to produce evidence of a valid and existing contract from February 1996. During discovery in this case, Ms. Morrison produced three pages from a different contract, not the contract under which Mr. Morrison would have fought on February 10, 1996. Furthermore, Plaintiff has produced no evidence of an intent to interfere with Mr. Morrison's contract to fight on February 10, 1996. Both Quest and NSAC, and its employees, merely followed their standard practices for testing blood samples, and for issuing licenses to fight.

Therefore, Defendants' Motions for Summary Judgment are granted as to Plaintiff's claim for intentional interference with a contract.

### V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motions for Summary Judgment (Dkt. Nos. 174 & 175) are GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motions to Extend Time (Dkt. Nos. 119, 155, and 156), Defendants' Motion to File Medical Records Under Seal (Dkt. No. 215), Defendants' Motion to Stay further briefing (Dkt. No. 268), and Plaintiff's Motion for Hearing (Dkt. No. 158) are DENIED as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Judicial Notice and Motions in Support of Summary Adjudication (Dkt. Nos. 125, 262) are DENIED with prejudice.

1    **IT IS FURTHER ORDERED** that Defendants' Motions to Strike (Dkt. Nos. 205, 212,
2    216, 217, 218, 222, 224, 225, 229) are GRANTED, and Dkt. No. 220 is DENIED.
3    The Clerk of the Court is instructed to close this case.
4    **DATED** this 24th day of October, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**